Zinn, Aldrich et al. v. Dzialynski.

Wm. G. Zinn, Aldrich and others, Appellants, vs. Louis Dzialynski, Respondent, and Sanderson & L'Engle, vs. Louis Dzialynski.

1. Z. A. & Co., in 1870, commenced suit by writ of attachment, and levied on the goods of D., defendant, and afterwards obtained judgment and issued execution. After the levy of the attachment, S. & L. sued D. by summons and obtained judgment and issued execution thereon before judgment was obtained in the attachment suit. The attached property had been sold under an order of court, and the proceeds remained in the hands of the sheriff. The plaintiffs in each suit ruled the sheriff to show cause why the proceeds should not be paid over to them, and the court made one or derunder the title of both suits, denying the application of the attaching creditor, and directing the sheriff to pay over the money to the plaintiffs, S. & L., after paying twenty dollars to the attorney of the sheriff for preparing his answer to the rules. Z. A. & Co., the attaching creditors, appealed, and the cause appeared upon the docket entitled as of both suits, when S. & L. moved to strike their names and their cause from the docket for the reason that they had not appealed, nor had the defendant appealed, and neither were willing that their suit should be on the docket. *Held*: That Z. A. & Co. had a right to appeal; that the use of the names of all the parties was proper under the form of the order, and that the position of S. & L., as well as that of the defendant, was that of respondents in the appeal.

2. In the above stated case the respondents insisted that the appellants, Z. A. & Co., were not entitled to the rule against the sheriff, because their judgment had been irregularly entered, and was taken without notice to the defendant therein or his attorneys. *Held:* That as the judgment purported to have been rendered by the court which had jurisdiction of the parties, and had not been set aside or reversed, the regularity of the plaintiffs' proceedings, or of the action of the court in giving judgment, could not be inquired into in this proceeding.

3. In a suit commenced by attachment, under the law of 1833, the levy of the attachment upon personal property gave to the plaintiff a specific lien upon the attached property to the amount of his demand, subject to pre-existing liens, and this lien was not divested or impaired by the subsequent recovery of a judgment by another party against the same defendant before judgment was obtained in the attachment suit; in such case the proceeds of the property attached should be first applied to satisfy the judgment in the attachment suit. The term "pre-exist-

ing liens," mentioned in the statute, refers to liens existing prior to the levy of the attachment, and not to any judgment which might be recovered before judgment had in the attachment suit.

4. An allowance to a sheriff of a sum of money for attorneys' fees for preparing a return to a rule to show cause why money in his hands should not be paid over, is not authorized by law. The "Act to Decrease the Expenditures of the State and to Regulate the Fees of Officers," approved June 6, 1870, expressly forbids the allowance of any charges, except such as are authorized by that act.

Appeal from the Circuit Court for Duval County, Fourth Judicial Circuit.

This is an appeal from an order made by the Circuit Court for Duval county, upon a summary application after judgment, which order directed the sheriff to pay over certain moneys in his hands upon which the appellants claim to have a lien. The order was in the following form:

"Zinn, Aldrich & Co.,  
     vs.  
  Louis Dzialynski.  

"Sanderson & L'Engle,  
     vs.  
  Louis Dzialynski.  

"The said causes coming on to be heard upon the motions of the respective plaintiffs for an order upon the sheriff to show cause why the money in his hands arising from the sale of the merchandise attached at the suit of the plaintiffs in the first of the above entitled actions, and also upon the answer of W. M. Ledwith, the sheriff aforesaid, to said motions, and it appearing from the files of the court in the said actions, and the pleadings and papers therein, and from the said answer of the said sheriff, that a writ of attachment issued in the action commenced by said Zinn, Aldrich & Co., was levied upon the said merchandize on the 28th day of May, 1870, and that execution was issued in favor of the said Zinn, Aldrich & Co., in said action, and placed in the hands of said sheriff on the 9th day of June, A. D. 1871, and it further appearing that on the 12th day of December, 1870, Messrs. Sanderson & L'Engle commenced an action by sum-

mons against the said Louis Dzialynski on a promissory note made by the said Dzialynski on the 1st day of December, A. D. 1870, to the said Sanderson & L'Engle or ——, that in the said last mentioned ——, execution was issued and placed in the hands of the said sheriff on the third day of May, A. D. 1871, and it further appearing from the answer of said sheriff that he has in his hands, arising from the sale of the said merchandize, attached as aforesaid, the sum of $421.05; that said each of said plaintiffs' claim from the said sheriff all of the said money to the exclusion of the other sharing therein, and that said sheriff desired the order of the court directing him to which of the said plaintiffs he ought to pay over the said money, and after argument of counsel on said motions and the answer, it is considered and ordered and adjudged, that the said execution issued in the said action commenced by Messrs. Sanderson and L'Engle, be ratified in full if there be moneys sufficient, after paying twenty dollars to the attorney of said sheriff for making said answer, and the balance, if any, paid over to Messrs. Zinn, Aldrich & Co., aforesaid.

" August 1, 1871."

This order was made under a rule upon the sheriff to show cause, &c., in each of the above entitled suits, and but one order was made, referring to both suits, as given above.

Zinn, Aldrich & Co., by their counsel, then and there excepted to this order and appealed, serving their notice of appeal upon Mr. L'Engle, surviving partner of Sanderson & L'Engle, attorneys for Dzialynski, defendant in appellant's suit, and as surviving plaintiff in the suit of Sanderson & L'Engle against Dzialynski. The judgment rolls in both the above mentioned suits are copied into the return upon this appeal. The further facts necessary to be stated are contained in the opinion. The appellants assign as errors, that the court erred in making an order directing the said moneys to be paid to them, and in directing the sheriff's

attorney to be paid out of said moneys for services in making the answer.

*Bisbee* and *Archibald* for Appellants.

1. The lien created by the levy of the writ of attachment takes precedence of a junior execution. Drake on Attachment, Sec. 229, citing 1 McCord, 480; 10 John. N. Y., 129; 2 Pen., 739; 1 Ala., 678; 7 Louisiana Annual, 1; 1 Grant, 172; 4 Smedes & Marshall, 579; 6 Hill, (N. Y.,) 362; 6 Ill. (1 Gibson,) 187; 12 Ala., 838; also Sec. 224 of Drake and cases cited in Notes 2 and 3.

2. Unless otherwise directed by statute, attachments take precedence, and are entitled to satisfaction in the order in point of time of their service. Drake, Sec. 231, Note 1.

3. There is nothing in the record to show that the fi. fa. in favor of Sanderson & L'Engle was ever levied upon the money, and without a levy Messrs. Sanderson & L'Engle had no right to ask for the money; they had no such lien as gave them any title to the money.

The delivery of a fi. fa. to the Sheriff creates only such a lien on personal property as to prevent the debtor from subsequently disposing of the property. 3 Fla., 176; 4 Fla., 126.

A subsequent fi. fa. if first levied is valid, and a sale thereunder of personal property passes the title. 4 Fla., 126.

But where money is in the hands of a sheriff arising from the sale of property attached before judgment, no formal levy of a fi. fa. is necessary. The delivery of a fi. fa. in such a case to the officer, is tantamount to a levy. 4 Met. 137.

4. The fi. fa. in favor of Sanderson & L'Engle could give them no greater right in the property than the defendant had when said fi. fa. was issued. This right was to sell and assign the money subject to the attachment lien. If said lien was discharged by dissolution of the attachment, or plaintiffs failure to recover judgment, then defendant had a right to the money, otherwise he had no right to it, and it became absolutely the property of the attaching creditor when his

judgment was recovered, which absolute right relates back to the date of the attachment. Drake on Attachment, Sec. 221.

5. An attachment levied takes precedence of an unlevied senior execution. Drake, Sec. 230, note 3, citing 11 B. Munroe, 23.

The plaintiffs representing the junior lien on this appeal contend, and have been sustained by the court below in the position, that because they recovered the judgment first, they can come in and take away all the fruits of the diligence of the plaintiffs in attachment.

It must be noticed that the demand sued on by Sanderson & L'Engle did not exist till over six months after the plaintiffs in attachment had acquired a lien, and that said Sanderson & L'Engle, being the attorneys for defendant in the attachment suit, had notice of said attachment lien when, they received from defendant the note sued on.

If this position is correct, then a lien by attachment is not of any effect and leaves it in the power of the debtor by collusion with others to entirely defeat the attachment lien.

The position contended for would operate as a gross fraud upon the rights of the plaintiffs in attachment.

Under the statute of February 17, 1833, Thompson's Digest, 368, the service of an attachment binds the property attached, except as against pre-existing liens, without any further qualification or restriction other than that the judgment recovered in the attachment suit shall be satisfied in the same manner as other judgments obtained at the same term of the court, or generally out of the goods, effects and estate of defendant.

The two judgments in question were not obtained at the same term of the court; hence the law of 1833 does not apply, and leaves the attachment to operate uncontrolled by any statute law, and so operating, the attaching creditor has the preference and is entitled to the money.

If the fi. fa. in favor of Sanderson & L'Engle cannot

share by virtue of the statute law of the State, it cannot share at all, because the lien of the attachment is of equal force with that of a levy of an execution, and the one first levied must be first satisfied.

We think it may be very forcibly urged that the construction given to the statute of 1833 by the Supreme Court in Post vs. Carpenter, 3 Fla., 1, is not sound, and that the only effect said statute has is to enforce in attachment suits the common law doctrine that every judgment at the same term of the court has relation to the first day of the term, and from that day is a lien on the real estate of the defendant; and that so far as the real property is concerned, the statute places judgments obtained at the same term of the court upon an equal footing, but leaves the lien upon personal property as before, to be obtained only by a levy of an attachment or fi. fa.

This view of the law is strengthened by the next section of said law of 1833, providing how personal property levied on shall be disposed of.

The attempt by Sanderson & L'Engle to share in this fund, or to get a preference thereto, is fraudulent in its effects upon the rights of the plaintiffs in attachment. Drake, sec. 275, and cases cited in that section.

In Smith vs. Gettinger, 3 Ga., 140, it is decided that a judgment which operates as a fraud upon the rights of other creditors will be set aside.

Again, under the Code, p. 56, sec. 186, all the proceeds of perishable property levied on by attachment are paid over by the sheriff to the attaching creditor.

We think the settled doctrine of equity should be applied to this case: " *Qui prior est tempore potior est jure.*"

If the equities be unequal, the preference will be given to the superior equity. Story's Eq. Juris., sec. 64.

Zinn, Aldrich et al. v. Dzialynski.

*John A. Henderson* for Sanderson & L'Engle.

To the first error assigned: The Court did not err in refusing order to pay over to Zinn, Aldrich & Co.

1st. Because the judgment and execution of Sanderson & L'Engle were prior to those of Z., A. & Co.; and the execution of Z., A. & Co. was not entitled to proceeds of sale of goods of defendant sold as perishable property, even though such goods might have been originally attached by Z., A. & Co. 3 Fla., 7.

2d. Because the judgment of Zinn, Aldrich & Co. was irregular and therefore void as to other creditors.

If the motion which defendant made to dissolve the attachment, and which was pending, was an appearance, the defendant was entitled to notice of the assessment of damages, which was not given. If it was not an appearance, any subsequent proceedings were irregular while the motion to dissolve remained undisposed of. Code, sec. 194; Thomp. Dig., 370; 4 Fla., 457.

It was an appearance, or the judgment which was taken would have recited for default of "appearance," as well as for default of "answer," &c.

In any event there was either appearance and defendant should have had notice, (Code, sec. 194,) or there was a motion to dissolve pending without appearance; hence the judgment was irregular. (See authorities above cited.)

To the second error assigned: There is no priority of attaching creditors as to whose attachments had been first levied. The lien upon such *personal* goods attaches from the day the execution went into the hands of the sheriff. Thomp. Dig., 368–70; 3 Fla., 1.

RANDALL, C. J., delivered the opinion of the court.

This cause was submitted on briefs by the respective counsel. At the time of submitting the cause, Mr. L'Engle, for Sanderson & L'Engle, and as counsel for Dzialynski, en-

tered a motion to strike the cause of Sanderson & L'Engle vs. Dzialynski from the docket, because it purports to be an appeal taken by said firm of Sanderson & L'Engle, whereas in fact neither they nor the survivor took or desired an appeal, and that no appeal has been taken in the cause of Sanderson & L'Engle vs. Dzialynski ; and for the further reason that neither party to said cause is willing that said cause should remain on the docket.

The cause upon the docket is entered therein under the double title of the two causes referred to, as the same appears upon the order from which the appeal was taken. The appeal, however, was taken only by Zinn, Aldrich & Co., and their right to appeal from the order, as it affects their interests, has not been questioned.

The objection raised by the motion to strike from the docket, is to the use of the names of Sanderson & L'Engle in the title of the proceeding. As the appellants, Zinn, Aldrich & Co., were affected by the order, they had a right to appeal, and the use of the names of the other parties was proper. This peculiarity in the form of the order creates no embarrassment, and indeed the use of the names of the parties in both suits for the purposes of this appeal is made necessary by the peculiar form adopted in framing the order.

The order is an adjudication in favor of Sanderson & L'Engle and against the appellants. It appropriates a fund to Sanderson & L'Engle, which, it is claimed by the appellants, belongs to the latter. The fund is the money realized by the sale of the property of the party who was the defendant in both suits in the Circuit Court, which fund must be applied upon the execution of one or both of the plaintiffs.

We think that L'Engle, survivor, &c., is an indispensable party to the appeal, as he was a party to the order, and his relative position is that of a respondent. The appeal was properly perfected by serving the notice upon him as a party and as the attorney of Dzialynski. Neither Mr. L'Engle,

as survivor, nor Sanderson & L'Engle, purport to be appellants.

The appellants are entitled to be heard, and have taken the only course left to them by the law to obtain their alleged legal rights. The motion to strike the cause from the docket, therefore, cannot be granted.

The appellants seized the goods of Dzialynski by means of a writ of attachment levied in May, 1870. The defendant made an issue by a traverse of the affidavit upon which the writ issued, and upon trial of this issue the writ and the suit were dismissed. Whereupon the plaintiffs appealed from the judgment of dismissal, and the judgment being reversed, the suit was restored to the docket of the Circuit Court and stood as though no trial had been had. No subsequent trial of the traverse was had, but a final judgment upon the merits in favor of the plaintiffs for $1,788.65 and costs was rendered by the Circuit Court, as we understand the record. It is insisted that the judgment was taken without notice to the defendant or his attorneys, and therefore was irregularly entered. This may have been the case, but still it is a judgment of a court of record, and the regularity of the proceedings cannot be called in question in this manner, the court having had jurisdiction of the parties and of the subject matter. If there were cause for setting aside the judgment or reversal on account of irregularities, the parties had their remedy by motion to the proper court. While it stands unreversed, a mere irregularity in a matter of practice cannot be inquired into collaterally as in this proceeding.

The more important question, however, is, whether the appellants are entitled to the proceeds of the property attached by them. Sanderson & L'Engle commenced their suit by summons against the same defendant in December, 1870, and obtained their judgment in January, 1871, several months before the appellants obtained their judgment, which latter was taken in June, 1871.

The appellants claim that they had an exclusive lien upon the proceeds of the property attached, and that such proceeds should be applied to the payment of their judgment and execution ; while L'Engle, survivor, &c., insists that his judgment and execution must be first satisfied, as the latter judgment, having been first entered, created a lien prior in right to that of the appellants, and so held the Circuit Court.

Section 9 of the act of February 17, 1833, (found in Thompson's Digest, 368,) reads as follows :  " The service of a writ of attachment shall not operate to dispossess the tenant of any lands or tenements, but such service shall bind the property attached, except against pre-existing liens ; but the judgment in a suit commenced by attachment shall be satisfied in the same manner as other judgments obtained at the same term of the court are, or shall be satisfied out of the lands and tenements, goods and chattels generally of the defendant in attachment ; provided, however, that judgment rendered against any garnishee or garnishees in said suit shall be appropriated exclusively to the satisfaction of the judgment rendered against the defendant, commenced by attachment as aforesaid."

Counsel for the respondent insists " that the attached property was not to be appropriated, under this statute, to the payment of the judgment obtained by the attaching creditor, unless such judgment be older than others, but that all judgments were to be satisfied, according to priority the only effect of the attachment being to hold the property for the payment of debts according to priorities to be afterwards established ;" and reference is made to the case of Post & Carpenter, 3 Fla., as establishing the construction thus contended for.

In that case the conflicting claimants were all attaching creditors, and their judgments were all obtained at the same term. We do not see that the court gives such a construction to the act as that the terms " pre-existing liens " re-

ferred to the date of the judgments to be thereafter recov-
ered and gave to such judgments a priority of lien over
that of an attaching creditor whose writ was levied before
any judgment was obtained. The terms " pre-existing liens"
must refer to liens existing prior to the levy of the attach-
ment.

In the cases mentioned in the section quoted, the writ of
attachment, duly levied, created a lien upon the property
seized, and this lien must be enforced in favor of the attach-
ing creditor, to the exclusion of all subsequent liens, except,
perhaps, as to such judgments as might be " obtained at the
same term of the court." It does not in express terms or
by implication yield any right to a judgment creditor whose
judgment may be obtained at any other term or time. The
court remarks in Post & Carpenter that " this law of at-
tachment being in derogation of the common law, we are
not disposed to extend its provisions beyond the manifest
meaning of its terms; and we should be loth so to extend
them as to give a preference to attaching creditors over
those who pursue the ordinary process of law, unless the
statute contained clear and unequivocal words to that
effect."

The 12th section of the act of 1833, found on the same
page, 368, of Thompson's Digest, is as follows: " All *per-
sonal* property levied on by attachment, unless replevied,
shall remain in custody of the officer who shall attach the
same until the judgment of the court shall be pronounced,
but when the property attached shall be of a perishable na-
ture, it shall be lawful  *  *  to grant an order for the
sale of such property,  *  *  and the proceeds of such sale
shall be paid into court and abide the judgment thereof."
It seems clear that the latter section in providing that per-
sonal property attached, or its proceeds if sold, shall remain
in the custody of the officers of the court until the judg-
ment of the court shall be pronounced, and abide such judg-
ment, secures and continues to the attaching creditor a spe-

cific lien upon it; and as a previous section provides that the writ shall require the officer to attach only *so much* of the defendant's property as will be sufficient to satisfy the sum demanded by the plaintiff in that writ, it would seem that it was intended to provide a security for the claim of that plaintiff only, and without some clear expression of the law to the effect that the proceeds of personal property attached shall be distributed among other creditors who have not attached it, thus taking away the security obtained by the more vigilant creditor, we are not inclined to give a construction that will produce such a result. That such may be the case where real property is attached, is not the question here. The court in Post & Carpenter has given to several attaching creditors, where personal property has been attached, a *pro rata* share of the proceeds without reference to the priority of the levy of the several attachments, where judgments were obtained at the same term. (What would have been the result if the creditor who obtained the first levy of an attachment had been unable to obtain his judgment until a term subsequent to that in which other creditors obtained judgments, the court in that case has not determined.)

It may be that a literal observance of the terms of the statute would be attended with some embarrassment, and might work injustice in some instances; but as the present case is not attended with such circumstances as to present any of the difficulties suggested, we are not required to go in search of them, nor do we conceive that the judgment of the court in the case referred to is inconsistent with our conclusions in the case before us. The judgment of Messrs. Sanderson & L'Engle does not appear to have been obtained at the same term as that of the appellants, neither was their suit commenced by writ of attachment.

But if there were any doubts upon the matter in question under the former statute, we think the provisions of the Code have removed them. Section 86 of the Code provides

that in case judgment be entered in such action, the sheriff shall satisfy the same out of the property attached by him, if sufficient for that purpose, by paying over to the plaintiff the proceeds of all sales of perishable property, and of any vessel or share or interest in any vessel sold by him, or of any debts collected by him; and by selling under execution any other property attached to satisfy any balance due, &c., and generally to apply all the proceeds of attached property to the payment of the judgment. The provisions of the Code apply to actions pending at the time of its taking effect, (July 1, 1870,) and the appellants' suit was then pending. The cause of action of Messrs. Sanderson & L'Engle, upon which their judgment was obtained, had not then accrued. By the terms of the statute, as we have seen, the levy of the appellants' writ created a lien upon the attached property, and no circumstances are presented which, under the statute, have deprived them of such lien. No other creditor had an interest in the lien. The attaching creditors could, at any time, have released their levy, and the property would have been returned to the defendant unincumbered, unless a subsequent levy had been made.

From the view we have taken, it results that the order appealed from must be set aside.

Exception was taken to the latter part of the order which allows to the attorney of the sheriff twenty dollars for preparing the answer of the sheriff to the rule requiring him to report the amount of the proceeds in his hands, and to show cause why it should not be paid over, &c.

This is a duty required of the sheriff, for which no specific fee is provided, and we think the court is not authorized by law to prescribe one. That is the province of the Legislature. An act entitled an act to decrease the expenditures of the State and to regulate the fees of officers, approved June 6, 1870, provides that the officers named, including sheriffs, shall not make any charge whatever, ex-

cept that in this section prescribed; and as no such allow-
ance or charge is prescribed, it is forbidden.

Order reversed.