ON MOTION FOR REHEARING
DAUKSCH, Judge.
We withdraw the previously published opinion in this matter and substitute the following in its stead.
This is an appeal from an order granting co-personal representative Thomas R. Mick-ler, Jr., personal representative’s fees in the amount of $140,000 and the attorney for the personal representative, Upchurch, Bailey and Upchurch, P.A., attorney’s fees in the amount of $50,000. We reverse on the authority of In re Estate of Platt, 586 So.2d 328 (Fla.1991).
Patricia Burdine died on July 13, 1986 and her will was admitted to probate on August 6, 1986. Her estate primarily consisted of Federated Department Store stock valued at $5.8 million. Under the terms of her will, several specific bequests were made to named beneficiaries and the residual estate was divided in four equal portions. Two portions went to her sister, appellant Zada Dutton Burdine Phipps, one to her half-brother, and one to the National Institute of Mental Health (Institute). Thomas R. Mickler, Jr. (Mickler) and Barnett Banks Trust Company (Barnett) were appointed as co-personal representatives. Mickler was not a lawyer so any legal matters concerning the estate were taken to the law firm of Upchurch, Bailey and Upchurch (Upchurch). The administration of the estate proceeded and ran very smoothly despite its size. In fact, the fee dispute which is the subject of this appeal was the first “novel question” in the probate administration.
On March 23, 1989, Burdine and Mickler filed a petition for discharge. An attached schedule showed the proposed compensation for services:
*383 Mickler $150,000
Barnett $150,000
Upchurch $ 50,000
Appellant Phipps filed an objection to the compensation paid and proposed to be paid. She challenged the reasonableness of compensation to be paid to Mickler and the Upchurch firm, but made no objection to Barnett’s fee. The Institute also filed a petition to review compensation, challenging Mickler’s fee, but not the Upchurch or Barnett fees.
An evidentiary hearing was held, the trial court denied both petitions, and appellant Phipps filed this appeal.
CO-PERSONAL REPRESENTATIVE AWARD
We find the trial court abused its discretion in awarding a fee of $140,000 to Mickler based on the evidence presented. Personal representatives are, of course, entitled to reasonable compensation.[1] Section 733.617, Fla.Stat. (1987). The, trial court found that the award to Mickler was justified based upon the fee customarily charged in the locality for similar services, the nature and value of the assets of the estate, the amount of income earned by the estate, and the responsibilities and potential liabilities assumed by the person. Sections 733.617(l)(a), (c) and (d), Fla.Stat. (1987). Also, the trial court said that the award to Mickler was justified based upon the nature and length of the professional relationship with the decedent. Section 733.617(l)(f), Fla.Stat. (1987). We do not believe this award can be justified based on any of these factors.
With respect to the nature and value of the assets of the estate, the amount of income earned by the estate and the responsibilities and potential liabilities assumed by the person and also the results obtained, we note that the estate, which was valued at $5,898,816.44, was under administration during the stock market decline of October 1987. At the same time, Federated was the object of a leveraged buy-out by Campeau. It was extensively argued below that Mickler was greatly exposed to liability for any breach of his fiduciary duty in the management of the estate assets. Section 733.615, Florida Statutes (1987) provides that when joint personal representatives are appointed, as here, concurrence is “required on all acts connected with the administration and distribution of the estate.” We find Mickler’s liability potential to be quite limited actually. While section 733.609 provides that “[i]f the exercise of power concerning the estate is improper or in bad faith the personal representative is liable to interested persons for damage or loss resulting from a breach of his fiduciary duty,” section 733.619(2) further provides “[a] personal representative is individually liable for obligations arising from ownership or control of the estate or for torts committed in the course of administration of the estate only if he is personally at fault.” It was undisputed below that Mickler had no expertise in the stock market area and that Mickler relied exclusively on Barnett’s expertise both in management of and sales from the stock portfolio and in the preparation of the federal tax return.
With respect to the nature and length of the professional relationship with the decedent, Mickler testified he took a more assertive and guiding role in managing the *384 decedent’s affairs for the period between his father’s death in 1985 and Patricia Bur-dine's death in 1986. Mickler’s father was the decedent’s attorney and business manager from 1947 until his death in 1985. When Mickler Sr. became incapacitated two or three years before his death, Mickler Jr. took over the management of Patricia Bur-dine’s affairs. His responsibilities included making bank deposits, sending notes and flowers to friends and relatives and making certain that pets were given their proper annual shots. For these services, the Mick-lers were paid $4,000 quarterly. But Mick-ler testified he did not begin actually working for the decedent until his father died on December 5, 1985, and the professional relationship between the decedent and Mick-ler was short in time.
With respect to the time and labor involved, Mickler testified he spent fifty to one hundred hours initially organizing the estate when the decedent died in 1986, and then during the following years spent four to five hours a week dealing with estate matters. Mickler testified the four to five hours a week of labor consisted of reviewing and signing financial documents produced by Barnett. When necessary, he called Barnett to request explanations. However, we find an award of this size to be unsupported by the record. Indeed, the trial court here made no calculation of “the number of hours reasonably expended in providing the service.” Platt, 586 So.2d at 333.
It seems clear from the testimony below that Mickler set his fee and requested his compensation based solely on the amount of the fee requested by Barnett and not upon the reasonable value of his services. Mickler’s expert on probate practice testified, “I look at it this way, $150,000 there is no qualm with that fee to the bank, there shouldn’t be any qualm to the other side.” Interestingly, while this same expert testified he had never actually recommended an individual co-personal representative charge the same as an institutional co-personal representative, he testified it was done. And, while Barnett’s fee — which is unchallenged in these proceedings — was apparently based on its published fee schedule, which in turn was based upon a percentage of the value of the estate, we note the supreme court in Platt rejected the argument that
percentage fees must be found appropriate in this instance because they are the only basis upon which fees are customarily charged for those services in this community. To adopt that view means that entities who serve as corporate fiduciaries in a particular community can, by their actions, control the method and amount of compensation of personal representatives for that area. They, rather than the legislature or the court, would determine what is a reasonable fee.
586 So.2d at 336. Since Mickler’s fee was merely intended to mirror that of Barnett, we believe it is subject to similar criticism.
ATTORNEY’S FEE AWARD
The trial court found that the $50,-000 attorney’s fee award to the Upchurch firm was justified based on the fee customarily charged in the locality for similar services, the amount involved and the results obtained, and the experience, reputation, diligence and ability of the person performing the services. Sections 733.-617(l)(c), (d) and (g), Fla.Stat. (1987). We do not believe the fee can be justified based on these factors.
The attorney involved testified that no novel or difficult questions were involved in the administration of the estate. He said that he had invested 41.6 hours in the case as of November 6, 1989. When asked how an award of $50,000 for approximately forty hours of work could be appropriate, the attorney responded, “[i]f you wish to calculate an hourly rate, do so ... [Sjince all interested parties had acknowledged their consent I felt it was an indication of what was reasonable.” In light of the limited hours spent in this estate, it cannot be claimed the acceptance of the estate precluded other employment. There were no will contests or adversary proceedings which would have presented liability exposure to the firm and thus no real basis for estimating the results obtained by the firm in its representation of the estate.
*385 With respect to the fees customarily charged for similar services, the expert witness on attorney’s fees pointed out that in In re Estate of Warwick, 543 So.2d 449 (Fla. 4th DCA 1989), the Fourth District Court of Appeal held that the lodestar approach of Florida Patients Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985) need not be applied in the determination of attorney’s fees under section 733.617. However, the supreme court disagreed and in Platt held the lodestar approach is appropriate for the determination of such fees. In re Estate of Warwick, 586 So.2d 327 (Fla.1991).
The expert testified that one factor to be considered was the gross value of the estate and the potential liability involved. He stated that considering
the local and customary practice of charging a fee looking at all of these factors clearly the hourly rate would not be an appropriate way to do it. Under the statute you don’t need to look at the hourly rate. You can look at any one of the factors, and I think to me the exposure to liability and the amount of the estate is determinative and it’s less than 1% so $50,000 to me would be a reasonable fee.
We note that the attorney involved here testified that the way his firm calculated an attorney’s fee in probate proceedings was to calculate a benchmark figure of 2½% for the first $100,000 of the estate and 172% of everything thereafter. This amount was then compared against the actual time records of the attorneys and paralegals and then the factors set out in Chapter 733.617. The attorney testified that based on these calculations, a reasonable attorney’s fee would have been $80,000, but in recognition of the ease of administration, the fee requested was reduced to $50,000. He testified that not only was this fee within the parameters for North Central Florida attorneys but actually was more modest than fee schedules he had seen published by other attorneys.
In Platt, the supreme court stated: While rate schedules are a factor that may be considered in determining a reasonable fee at the end of the service, they should not be presented as the sole factor for determining a reasonable fee absent an agreement. We believe the legislature intended for the trial judge to independently determine a reasonable fee.
586 So.2d at 337. Here, the court was discussing published rate schedules of corporate fiduciaries. But we believe the same analysis is applicable to attorney’s fee awards. Since the attorney’s fee award in the instant case seems to have been primarily based upon the size of the estate and not upon an independent determination by the trial court, we believe this award represents an abuse of discretion.
For the reasons expressed, we reverse the decision of the trial court and direct that this cause be remanded to the trial court for further proceedings to calculate the attorney’s fees and personal representative’s fee in accordance with the views expressed in this opinion.
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.

. 733.617 Compensation of personal representatives and professionals.—
(1) Personal representatives, attorneys, accountants, and appraisers and other agents employed by the personal representative shall be entitled to reasonable compensation. Reasonable compensation shall be based on one or more of the following:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly.
(b) The likelihood that the acceptance of the particular employment will preclude other employment by the person.
(c) The fee customarily charged in the locality for similar services.
(d) The amount involved and the results obtained.
(e) The time limitations imposed by the circumstances.
(f) The nature and length of the professional relationship with the decedent.
(g) The experience, reputation, diligence, and ability of the person performing the services.