GRIFFIN, J.
James and Sharon Vaughn [“the Vaughns”] appeal a final judgment awarding a money judgment in favor of Paul Munn [“Munn”]. Munn, who purchased a home from the Vaughns, obtained a verdict for breach of contract and fraud in connection with the sale. The Vaughns contend on appeal that there was no evidence of fraudulent nondisclosure but, mainly, the Vaughns claim the damage award was excessive. In his cross-appeal, Munn argues that the trial court erred in requiring an election of remedies between fraud and breach of contract. In the consolidated appeal, Munn contests the amount of fees awarded on the breach of contract count.
The property in question, located on the inland waterway in New Smyrna Beach, had been appraised in 1996 and valued at between $354,000.00 (comparable sale approach) and $378,000.00 (cost approach). In October of 1996, the home sold to Sandy Kagel [“Kagel”] for $325,000.00. The Vaughns transferred their Sears termite bond in the amount of $250,000.00 to Kagel. Kagel ultimately brought suit against the Vaughns, Sears and the title company claiming she had discovered termite and plumbing problems. The Vaughns foreclosed and reclaimed the property.
Because the Sears termite bond had lapsed during Kagel’s ownership, the Vaughns had to enter into a new termite contract with Sears on October 21, 1997. Shortly thereafter, in December of 1997, a sales and purchase contract was entered into between the Vaughns and Munn for $325,000.00. The- Sears termite bond, paid for by the Vaughns until the renewal date of November 1998, was transferred to Munn.as part of the sale.
Paragraph W of the sale and purchase contract provided that the seller “warrants that there are no facts known to seller materially affecting the value of the property which are not readily observable to buyer or which have not been disclosed to buyer.” No termite or roofing problems were disclosed. A standard termite inspection had been performed on the residence prior to its purchase by Munn and no evidence of termites was reported.
In August of 1999, extensive termite damage was discovered in the home and it appeared that the structure had been under attack by termites for ten to fifteen years prior to 1999. There were also design flaws in the roof that led to extensive moisture problems and water leaks. Munn tore the house down, contending that the home had no value' to him, and built a new steel-reinforced concrete block home with a three-car garage at a cost of $343,000.00. Munn’s contractor testified that the cost to rebuild the house as originally built would have been greater due to several labor and material intensive features such as wood construction, fireplace, siding and interior cedar.
In October 1999, Munn sued James and Sharon Vaughn for breach of the contrae- *1096 tual disclosure warranty and for fraud, claiming damages as follows: new construction ($843,200.00), inspections ($14,-289.00), landscaping ($7,041.00), moving and storage ($3,000.00) and rental ($27,-000.00), for a total of $395,651.00.[1] The jury entered a verdict in favor of Munn and awarded him $395,651.00. The jury also awarded punitive damages on the fraud count in the amount of $64,674.50 against each defendant.
On June 25, 2001, the Vaughns filed a motion for new trial. The motion for new trial asserted that the court erred in failing to grant the Vaughns’ motion for directed verdict as to the count for fraud in the inducement and that the court erred in failing to give the correct jury instruction defining fraudulent nondisclosure. The Vaughns also argued that the jury’s verdict for compensatory damages was not supported by any record evidence. The Vaughns noted that the jury awarded Munn all of the costs for his demolition of the purchased structure and construction of a new, “larger home,” without regard to the court’s instruction that the measure of damages could not exceed the reduction in the value of the structure.
The damage instruction given to the jury was:
You shall consider the following elements. The reasonable rental value of the home. Moving and storage costs, landscaping costs, and the cost of repair or replacement of the home not to exceed the ... fair market value of the structure itself. If the costs of repair or replacement of the structure exceeds the fair market value of the structure as of the date of purchase, you should award the Plaintiff an amount equal to the fair market value of the structure at the time of purchase. (Emphasis added.)
The Vaughns claim there is no evidence in the record of the reduction in value of the property resulting from the breach. The Vaughns also point to the defense expert, Emily Lockett’s testimony, that her 1996 appraisal concluded that the river-front lot on which the structure was situated had a value of $195,000.00 and that the house itself had a value of only approximately $173,120.00. Given these valuations, the jury’s verdict determined that the damage to the structure diminished the value of the property to something below zero. The Vaughns argued that, based on the evidence at trial, the most the jury could award Munn for the loss of value of the structure at the time of purchase was $173,120.00.
On June 26, 2001, the Vaughns also filed a motion for remittitur. Once again, the Vaughns claimed that it was undisputed that the jury awarded Munn the total cost to build a brand new home of approximately $343,200.00. They reiterated that this was excessive in light of the facts presented to the jury:
The only competent evidence submitted to the jury in regards to the value of the structure of the home itself on the date of purchase by the plaintiff was from defense witness, Emily Lockett, an appraiser with approximately 14 years experience. It was Ms. Lockett’s professional opinion that the value of the structure itself at or about the time of purchase by the plaintiff was approximately $178,000.00.
The Vaughns again pointed out that the jury was instructed that they were to award the plaintiff the cost of repair or replacement of the structure but not to *1097 exceed the value of the structure at the time of purchase.
The trial court denied these motions in an extensive speaking order, explaining as to the damages issue:
In this state, damages involving real property are recoverable according to either diminution in value, or the cost of restoration — restoring the property to its condition prior to the damage. At trial, plaintiff presented evidence from which the jury could have reasonably concluded that the restoration cost was $343,021, and that this did not exceed the diminution in value of the house, where the house and land had a total value of some $450,000.
We take this to mean that the jury could have concluded, based on the evidence, that the true value of the structure on the date of the purchase was equal or greater than the $343,200.00 expended to replace it.
Given that the value of the structure on the date of purchase was central to this case, the paucity of evidence on this point is interesting. The plaintiff was content to offer his own personal opinion as owner that the day after the purchase for $325,000.00, the property was worth $450,000.00.[2] The defendant relied on a sixteen-month old appraisal, which had, at least, valued the structure.
We agree with the Vaughns that the verdict cannot stand. Given that the burden of proof of damages was on the plaintiff and that the only record evidence of the value of the structure was $173,120.00, the verdict awarding $343,200.00 as being less than or equal to the value of the structure on the date of sale has no evidentiary basis. The jury was not free simply to pick a number between $0 and $450,000.00 and attribute it to the structure. A new trial on damages is required.[3]
A second issue in this case is whether the Vaughns were entitled to a set-off for the $115,000.00 payment by Sears under the termite bond or the $57,500.00 paid by Munn’s homeowner’s insurance carrier. As with the damages issue, this issue was not well developed at trial. Throughout the trial, plaintiff was allowed to suggest that the termite bond had no value even though he had recovered a substantial sum under it from Sears. The most recent annual renewal fee had been paid by Munn, but the record suggests that the bond was transferred to Munn as part of the consideration for the purchase of the house. The trial court correctly ruled that the payment by Clarendon Insurance was a collateral source not subject to set-off. The issue as to the *1098 termite bond is not so clear, however. On remand, we think this is an open issue.
On cross-appeal, Munn contends that the court erred in interpreting a “minimum fixed attorney’s fee agreement” to mean a maximum fee agreement. The fee agreement provided for payment of “a reasonable fee for legal services at the following minimum rates: attorney time— $175.00 per hour, legal assistant time— $75.00 per hour.” Munn argues that the court failed or refused to consider an enhanced rate as suggested by Munn’s expert ($250.00 per hour as opposed to $175.00 per hour). Munn also suggests that the court failed to determine a lodestar as mandated by Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), and that this could have exceeded the $175.00 per hour. We see no error. The trial court found that the fee contract was intended to be a $175.00 per hour fixed fee and that $175.00 was what counsel was paid.
Finally, we agree with the trial court that an election of remedies was required.
AFFIRMED in part; REVERSED in part; and REMANDED.
SAWAYA and PLEUS, JJ., concur.

. Prior to trial, Sears paid Munn $115,000.00 for termite damage and Munn released Sears from all liability. In addition, Munn maintained a homeowner’s insurance policy with Clarendon Insurance Company, and Munn made a claim on this policy on July 28, 1999, for water damage. The claim was settled by a payment of $57,500.00.

. When Munn’s counsel first asked for his opinion as to the value at the time of purchase, there was an objection based on his lack of expertise. There ensued an off-the-record discussion with the judge, after which Munn’s counsel asked a different question— Munn’s belief as to the value of the home the day after he purchased it. We could surmise that this off-the-record discussion concerned whether Munn was competent to testify as "owner” to the value of the property before he became the owner, but the record is silent on this point. It is clear, however, that Munn offered no evidence as to the value of the property (land or structure) on the date he purchased it. When asked the value of the "home,” Munn responded: "between $400 and $450,000 dollars.” It is apparent from the subsequent responses that this was his valuation of the house and land together.

. We do not by our silence endorse the proposition that in an action for breach of a disclosure warranty in a contract to sell real property for $325,000.00, that the aggrieved party can claim to be damaged because the property was worth less than $450,000.00. Nor do we express any endorsement of the jury instruction given. The parties have offered no analysis of the correct measure of damages, but have accepted the jury instruction as given.