# KOCIS v WINTER, et al.

## Case No. 86-15818-21

Sixth Judicial Circuit, Pinellas County

May 20, 1989

**APPEARANCES OF COUNSEL**

**Christian Searcy,** for plaintiffs.

**Donald V. Bulleit,** for Defendant, Winter.

### OPINION OF THE COURT

JOHN E. HODGES, Circuit Judge.

*ORDER ON MOTION TO TAX ATTORNEY'S FEES*

*STATEMENT OF THE CASE*

RICHARD J. KOCIS and VICKI T. KOCIS employed the attorneys in this case to represent them in a damage suit against the Defendants for what they believed was the negligent care and treatment of their 18 year old son, RICHARD J. KOCIS, JR., resulting in his untimely death of multi-system failure on June 27, 1985.

Under the attorney/client contract entered into between The Kocises and the law firms of Tanny, Ford, Donahey, Eno and Tanney, and Montgomery, Searcy and Denny, the Plaintiffs became legally obligated to pay to the attorneys, as fees for their services, a sum equaling 40% of the total recovery obtained against the Defendants. There was no other agreement or limitation insofar as fees are concerned.

Pursuant to the contract of employment, the attorneys on behalf of Richard J. Kocis and Vicki T. Kocis, as Personal Representatives of the Estate of Richard C. Kocis, Jr., Deceased, filed in this Court on October 20, 1985, a malpractice action for damages against Defendants, JOHN WINTER, D.O., ROBERT PETTYJOHN, D.O., JACK L. WISE, D.O., and METROPOLITAN GENERAL HOSPITAL. All of the Defendants denied the allegations of wrongdoing and damages alleged in the Complaint.

Litigation progressed spiritedly and voluminously in the cae against all four named Defendants for a period of over two years. Deposition discovery, expert and lay, was exhaustive and far-ranging, geographically as well as factually, involving many thousands of miles in travel and a comparable number of pages of medical records and other multiphased and multi-faceted related documentation. Pleadings, legal research and briefing have been professional, appropriate and complete at all stages of the litigation.

Other salient events in the prelude to the existing dilemma before the Court are: (1) The Defendant, JOHN WINTER, D.O., served an Offer of Judgment to the Plaintiffs on February 1, 1988. (2) The jury trial of the cause was set to commence on February 20, 1989, and was scheduled for a period of three weeks. (3) On February 20, 1989, prior to voir dire examination of the jury, the Plaintiffs settled with the Co-Defendants, ROBERT PETTYJOHN, D.O., JACK L. WISE, D.O., and METROPOLITAN GENERAL HOSPITAL for the sum of $1,500,000, for which no judgment was entered. In the settlement with the three Defendants, nothing appears of record relative to the payment of attorneys fees and costs.

Thereafter, during the process of selecting a jury, the Plaintiffs settled with Dr. Winter, D.O., the only remaining Co-Defendant, accepting an offer and judgment against Dr. Winter in the amount of $250,000 and, if applicable, attorney's fees and costs, a sum to be determined by the Court. The offer was accepted as an amount exclusive of the $1,500,000 setoff.

The settlements, of course, resulted in a gross recovery for the Plaintiffs of $1,750,000.

Following the completion of this precursory scenario, the matter then came before the Court upon Plaintiffs' Motion to Tax Attorney's Fees under Section 768.56, Florida Statutes.

An overture of various objections and remonstrative motions related to the question of fees were presented to the court by both parties prior to a full evidentiary hearing thereon, on March 3, 1989.

In the orchestration of these pleadings, the Plaintiffs contended that they are the prevailing parties in the action against Dr. Winter against whom the only judgment was entered. They alleged that the judgment of $250,000 against Dr. Winter in excess of the $1.5 million setoff plus attorney's fees and costs is greater than the February 1, 1988, Offer of Judgment for $250,000 including attorney's fees and costs under the rule (1.444, Florida Rules of Civil Procedure).

The Plaintiffs confidently state that they are entitled to an award of $700,000 as their attorney's fees because the Kocises are contractually required to pay to them 40% of the total recovery which was $1,750,-000; that the entire $700,000 is an appropriate and proper amount for an award of attorney's fees against Dr. Winter because he was the most culpable defendant and that the hours spent on the case against him were indivisible and so intertwined with those spent against all of the other co-defendants that all hours spent in pursuit of the total case were necessary in promoting and litigating the case successfully against Dr. Winter, who was, the Plaintiffs' claim, the only non-prevailing party under the applicable law.

The Defendant argued that no fees whatever should be assessed against Dr. Winter, as the ultimate judgment against him in the amount of $250,000 is not more favorable than the prior Offer of Judgment which was served in February of 1988 and that, therefore, the Plaintiffs were not prevailing parties against him under the rule. The Defendant also contended that inasmuch as the sole judgment obtained in the matter is against Dr. Winter in the amount of $250,000, that amount is the total recovery obtained by the Plaintiffs against him, thus limiting the Plaintiffs entitlement to fees to 40% of that amount, which is $100,000. They insist, however, that the fees against WINTER alone should not exceed the 1/7th ratio that the recovery against him ($250,000) bears to the total recovery ($1,750,-000) or $41,948.57, on the basis of 734.1 hours at $200 per hour and a risk contingency multiplier factor of 2.0. They finally add that, even assuming a fee of $700,000, based upon the total hours and rates as shown by the Plaintiffs' exhibits, to be correct, the 1/7th ratio would limit the fees of Dr. Winter to $100,000, which is identical to the 40% cap under the $250,000 judgment.

164

Based upon the full evidentiary hearing before the Court, during which experienced and prominent members of the trial bar testified as expert witnesses, able argument of counsel and complete research of pertinent authority the Court has arrived at certain findings and conclusions:

(1) The attorneys involved in this litigation have performed highly professional and valuable service for their clients. The amount and caliber of work on the part of the Plaintiffs' attorneys were impressive, and the total fee of $700,000 charged to their clients in the litigation against all defendants in view of the ultimate recovery does not appear to be unreasonable.

(2) The Court finds that the Plaintiffs are entitled to attorney's fees against the Defendant, WINTER, even though this Court, by another Judge, had previously entered an Order denying the Plaintiffs' motion for same. Under Rule 1.442, Florida Rules of Civil Procedure, the facts show that the Plaintiffs were prevailing parties, inasmuch as the judgment against Dr. Winter in the amount of $250,000 was in excess of any applicable setoff.

(3) In addressing the pertinent question of fees, the Court has reviewed what it believes to be all of the decisions drawn into the vortex of the *Florida Patients Compensation Fund v Rowe*, 472 So.2d 1145 (Fla. 1985). *Rowe's* offspring presents no case directly addressing the factual complex here. From the melange of decisions it appears to the trial court that the *Rowe* recitals are limited to: (a) fees imposed ancillary to the primary action against a non-client either under common law principles or pursuant to *statutory* authority. (b) When there is more than one party or one or more sides of an action the Court just allocate its award of attorney's fees *among prevailing parties* and tax such fees *against non-prevailing parties* in accordance with the *principles of equity.* See F.S. 768.56. (c) In any case the fees awarded by the Court should *not exceed* the *fee arrangement between the client and the attorney.*

As stated in *Rowe,* the amount of attorney's fees to be awarded under the statute, must be determined on the facts of each case. This helpful and much used enunciation is a way of impliedly giving the trial court some unspecified discretion in the matter. And the Court has exercised that discretion to its outer limits in a considerable struggle to meet the equitable mandate of the statute here.

An approach to finding an established method of precisely fixing equitable fees, in a case such as this, does not exist in Florida jurisprudence. An attempt to fix a reasonable and proper fee, under the

**165**

recitals of *Rowe,* in the factual milieu of this particular case, is much akin to that of fixing and evaluating the number of genuine teardrops shed by each of several participants in a lovers' heartbreak, or the number of assorted feathers it takes to make three comfortable feather pillows. Trying to devise a legally reliable formula for taxing equitable attorney's fees, under the present statute, compares to that of trying to nail a spoonful of jello to the wall.

Nevertheless, under *Rowe's* instructions, the Court has engaged in the process of establishing and evaluating the hours and value of services involved, from all of the evidence presented, and has made a determination of the reasonable value of professional services rendered by the Plaintiffs' attorneys in processing the case to judgment against the Defendant, Dr. Winter, the total cost of which services would be taxable against him were it not for the proscription of the law as it exists today.

As a result , the Court has ascertained that:

1. The number of hours reasonable expended by Plaintiffs' attorneys in this case against Dr. Winter total 521.52 hours.

2. Christian Searcy, Esquire, Attorney for Plaintiffs, is entitled to be awarded a fee of $400.00 per hour after January 1, 1987, and $250.00 per hour prior to January 1, 1987, for his outstanding services.

3. Two hundred dollars per hour is a reasonable hourly rate for the other attorneys involved on behalf of the Plaintiffs.

4. The Court has disallowed duplication and discarded travel and other factors which may not be properly awarded to the Plaintiffs in arriving at his findings in this regard.

5. In arriving at the hourly rates, the Court has followed the criteria as outlined in *Rowe* for their fixing; the going rates charged in the community by lawyers of reasonable comparable skills, experience and reputation for similar services. In this cae, of course, the rates prevailing in Pinellas County are controlling.

6. The Court set a 2.5 contingency risk factor in the case instead of 3.0 inasmuch as it appears that the Plaintiffs had their best case against Dr. Winter.

Alternative approaches to arriving at an equitable allocation of fees against Dr. Winter, on the basis of mathematical or geometric ratios of the total recovery, as between the parties, have been carefully considered but discarded by the Court as not being responsive to the reckoning required by the prevailing law, even though, incidentally,

166

they lead to the same or lesser fees to be awarded to the Plaintiffs in the case against the Defendant, WINTER.

After cautious analysis, the Court rejects the Plaintiffs' contention that because Dr. Winter was the only non-prevailing party against whom judgment was entered, he should be saddled with the total costs of Plaintiffs' legal services in the case, and is also insensitive, because of the 40% cap, to the suggestion that she should, in any event, pay for all non-intertwined fees and divisible services to which the Plaintiffs might be entitled under *Rowe.* Their argument in this respect appears to be tailored more to the lure of legal sophistry rather than to the statutory demands of equity. Its patent plausibility evanesces with the knowledge that the full settlement with the three Co-Defendants entitled the Plaintiffs to attorney's fees under the statute, even though no judgment was entered, and that obviously the fees were waived upon acceptance of the $1,500,000 with no demand for fees.

The trial court is convinced that the prevailing case law of Florida, although as yet not articulated in crystal clear fashion, definitely prohibits a recovery of attorney's fees from opposing parties where the Plaintiffs have, in the settlement agreement with them, waived the same. The unmistakable and perhaps strategic waiver of fees from the three Co-Defendants here left the Plaintiffs with an option or calculated risk to try the case against Dr. Winter or to settle with him. They chose to settle for the sum of $250,000, which the Defendants agreed would be over and above the $1,500,000 setoff. In order for the Plaintiffs to have received a greater actual recovery from Dr. Winter or a fee greater than the contract fee, they would have been required to obtain a verdict and judgment in excess of $1,750,000 against Dr. Winter in view of the offset involved. Plainly, the Plaintiffs opted not to take such a chance, perhaps believing strongly that they should be able to secure indemnification from Dr. Winter for the deficit occasioned by their strategic settlement and waiver with the three Co-Defendants.

It appears, after careful research and reflection, that the decisions of *Rowe* and its related cases have restricted the amount of the fee awarded under the medical malpractice statute to the contract price because of the exposure and temptation to possible bootstrapping and fee collusion which might otherwise obtain against a non-client defendant who is not a participant in the fashioning of the fee agreement and who has no control over the fees to be taxed against him.

Perhaps desiderate of the law should provide channels or guidelines within which the trial court would be allowed to determine a fair and

equitable fees as found by the Court to be taxed against a non-client defendant such as the one involved here, unfettered by limitation of the original contract between the Plaintiff and his attorney, but again, no such authority or guidelines are now available.

In consideration of the findings of the court, with respect to the hours spent and evaluation of said hours in the prosecution of this case in Pinellas County, Florida, against the Defendant, Dr. Winter, the Court concludes, as accurately as possible, that a reasonable and equitable fee, to be awarded to the Plaintiffs, but for the constraints of *Rowe,* would be $293,640. However, in the light of the limitation imposed by the case law of Florida as it now exists, the Court, for the reasons herein expressed, must limit the fee to $100,000, pursuant to the fee arrangement between the clients and their attorneys.

It is, therefore, upon consideration,

ORDERED AND ADJUDGED that the Motion for the Plaintiffs, RICHARD J. KOCIS and VICKI T. KOCIS, to tax attorney's fees against JOHN WINTER, D.O., Defendant, be and the same is hereby granted and that the said fees be and the same are hereby taxed in the amount of $100,000.

DONE AND ORDERED in St. Petersburg, Pinellas County, Florida, this 20th day of May, 1989.