472 So.2d 1145 (1985)
FLORIDA PATIENT'S COMPENSATION FUND, Appellant,
v.
Lena ROWE, Appellee.
No. 64459.
Supreme Court of Florida.
May 2, 1985.
Rehearing Denied August 16, 1985.
*1146 Richard B. Collins and Craig A. Dennis of Perkins and Collins, Tallahassee, for appellant.
Arnold R. Ginsberg of Horton, Perse and Ginsberg, Barranco and Kellough, P.A. and Goldberg and Vova, Miami, for appellee.
OVERTON, Justice.
This cause concerns the constitutional validity of section 768.56, Florida Statutes (1981), which directs the trial court to award a "reasonable attorney's fee" to the prevailing party in a medical malpractice action. It is before us by virtue of our "pass-through" jurisdiction,[1] the Second District Court of Appeal having certified the judgment as involving an issue of great public importance requiring immediate resolution by this Court.
The appellee, Lena Rowe, was the prevailing party in a medical malpractice action against Lee Memorial Hospital. The appellant, Florida Patient's Compensation Fund, is responsible for payment of the portion of the judgment against the hospital that exceeds the $100,000 primary coverage. The trial court expressly found constitutional section 768.56, Florida Statutes (1981), and expressed concern in its judgment regarding the appropriate method for computing reasonable attorney fees pursuant to the statute, and reserved jurisdiction for a further hearing concerning the amount of the fee.
For the reasons expressed, we hold that section 768.56 is constitutional and adopt the federal lodestar approach for computing reasonable attorney fees. We note that in our decision in the consolidated cases of Young v. Altenhaus and Mathews v. Pohlman, 472 So.2d 1152 (Fla. 1985), issued simultaneously with this opinion, we held that this section may not be applied in cases where the cause of action accrued prior to July 1, 1980.

*1147 Constitutionality of Section 768.56

This attorney fee statute has been criticized and challenged as unconstitutional by medical malpractice plaintiffs, defendants, and academic commentators. See, e.g., Spence and Roth, Closing the Courthouse Door: Florida's Spurious Claims Statute, 11 Stetson L.Rev. 283 (1983). The Fund, a defendant below in this case, and Mathews, the plaintiff below in Mathews v. Pohlman, each contend that the statute fails to meet the strict scrutiny and rational basis tests under the due process and equal protection clauses of the Florida and United States Constitutions. In particular, the Fund argues that the statute "imposes a penalty" on the non-prevailing party by requiring the payment of reasonable attorney fees. In Mathews, the plaintiff contends that the statute violates the access to courts provision of the Florida Constitution[2] by "chilling" litigation that would otherwise be instituted by victims of medical malpractice.
Each district court of appeal that has addressed this issue has upheld the constitutionality of the statute. See Bayfront Medical Center, Inc. v. Ly, 465 So.2d 1383 (Fla. 2d DCA 1985); Frankowitz v. Propst, 464 So.2d 1225 (Fla. 4th DCA 1985); Davis v. North Shore Hospital, 452 So.2d 937 Fla. 3d DCA 1983); Young v. Altenhaus, 448 So.2d 1039 (Fla. 3d DCA 1983); Pohlman v. Mathews, 440 So.2d 681 (Fla. 1st DCA 1983); Florida Medical Center, Inc. v. Von Stetina, 436 So.2d 1022, 1032 (Fla. 4th DCA 1983). In Von Stetina, the district court of appeal applied the rational basis test, found that this statute creates a reasonable classification, and held that it does not violate the due process and equal protection clauses of the United States Constitution. The First District Court of Appeal, in Pohlman v. Mathews, approved the reasoning contained in the Fourth District Court's Von Stetina decision, concluding that the rational basis test applies and that the distinction drawn between medical malpractice litigants and other tort litigants bears a reasonable relationship to a legitimate government purpose, and that the provision for attorney fees bears a reasonable relationship to the legislature's objective. The First District also concluded that the statute does not abrogate the right to sue and "does not deny access to the courts even though ... it may affect the decision to bring a lawsuit." 440 So.2d at 683.
The subject statute, section 768.56, was adopted as part of the Medical Malpractice Reform Act and became effective July 1, 1980. It directs that "the court shall award a reasonable attorney's fee to the prevailing party in any civil action which involves a claim for damages by reason of injury, death, or monetary loss on account of alleged malpractice" unless the non-prevailing party "is insolvent or poverty stricken," and requires an attorney to "inform his client in writing of this statutory provision." The preamble to section 768.56 indicates that the mandatory assessment of attorney fees in favor of a prevailing party in a medical malpractice action is intended to discourage non-meritorious medical malpractice claims. See ch. 80-67, Laws of Fla.; cf. Bill Analysis, House Committee on Insurance, CS/HB 1133 (5-19-80).
At the outset, we note that some of the decisions of this Court contain the historically incorrect statement that attorney fee statutes are "in derogation of the common law."[3] At the time of the American Revolution, the English courts generally awarded *1148 attorney fees to the prevailing party in all civil litigation. See M. Derfner, Court Awarded Attorney Fees 1.02[1] (1984) (hereinafter Derfner); Goodhart, Costs, 38 Yale L.J. 849, 851-54 (1929); Note, Attorney's Fees: Where Shall the Ultimate Burden Lie?, 20 Vand.L.Rev. 1216, 1218 (1967). By its decisions, however, this Court, along with the majority of other jurisdictions inthis country, refused to accept the "English Rule" that attorney fees are part of the costs to be charged by a taxing master, adopting instead the "American Rule" that attorney fees may be awarded by a court only when authorized by statute or by agreement of the parties. See, e.g., Hampton's Estate v. Fairchild-Florida Construction Co., 341 So.2d 759 (Fla. 1976); Webb v. Scott, 129 Fla. 111, 176 So. 442 (1936); State v. Barrs, 87 Fla. 168, 99 So. 668 (1924); Zinn v. Dzialynski, 14 Fla. 187 (1872). See also Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (reaffirming the American Rule). The English Rule has strong advocates in this country, however. See, e.g., Bishop, Let's Adopt the English Fees Award System, 4 Cal.Law. 10 (1984). This state has recognized a limited exception to this general American Rule in situations involving inequitable conduct. See Wahl, Attorney's Fees Taxed Against a Party Because of his Inequitable Conduct, 26 Fla.L.J. 281 (1952); Wahl, Attorneys' Fees Taxed Against Opposing Party, 37 Fla.B.J. 220 (1963).
The legislature of this state has not hesitated to enact statutes providing authority to the courts to award attorney fees. Section 57.105, Florida Statutes (1983), for example, directs the courts to award a reasonable attorney fee to the prevailing party in civil litigation when the court finds that the losing party raised no "justiciable issue of either law or fact." In addition, the Florida Legislature has enacted more than seventy statutes authorizing the courts to award attorney fees in specific types of actions.[4] These provisions fall into two general categories. In the first, statutes direct the courts to assess attorney fees against only one side of the litigation in certain types of actions. See, e.g., § 627.428, Fla. Stat. (1983) (attorney fees assessed against insurer), and §§ 73.091, 73.092, and 73.131, Fla. Stat. (1983) (attorney fees assessed against condemning authority in eminent domain proceedings). The second category adopts the English Rule, authorizing the prevailing party, whether plaintiff or defendant, to recover attorney fees from the opposing party. See, e.g., § 713.29, Fla. Stat. (1983) (mechanics' liens), and §§ 83.48 and 83.756, Fla. Stat. (1983) (landlord and tenant proceedings).
Statutes authorizing courts to award attorney fees to prevailing litigants have long withstood constitutional attack. See, e.g., Hunter v. Flowers, 43 So.2d 435 (Fla. 1949) (upholding statute authorizing the recovery of attorney fee by a successful claimant enforcing a laborer's lien). The question of whether such provisions violate the due process and equal protection clauses of the fourteenth amendment to the United States Constitution was specifically addressed by Justice Cardozo in Life and Casualty Insurance Co. v. McCray, 291 U.S. 566, 569, 54 S.Ct. 482, 483, 78 L.Ed. 987 (1934), in which he said:
We assume in accordance with the assumption of the court below that payment *1149 was resisted in good faith and upon reasonable grounds. Even so, the unsuccessful defendant must pay the adversary's costs, and costs in the discretion of the lawmakers may include the fees of an attorney. There are systems of procedure neither arbitrary nor unenlightened, and of a stock akin to ours, in which submission to such a burden is the normal lot of the defeated litigant, whether plaintiff or defendant. The taxing master in the English courts may allow the charges of the barrister as well as the fees of the solicitor. Nothing in the Fourteenth Amendment forbids a like procedure here.

(Emphasis added; footnote omitted.)
We reject the Fund's contention that requiring an unsuccessful litigant to pay the prevailing party's attorney fees constitutes a "penalty" offensive to our system of justice. The assessment of attorney fees against an unsuccessful litigant imposes no more of a penalty than other costs of proceedings which are more commonly assessed. In certain causes of action, attorney fees historically have been considered part of litigation costs and the award of these costs is intended not only to discourage meritless claims, but also to make the prevailing plaintiff or defendant whole. It can be argued that, rather than deterring plaintiffs from litigating, the statute could actually encourage plaintiffs to proceed with well-founded malpractice claims that would otherwise be ignored because they are not economically feasible under the contingent fee system. The statute may encourage an initiating party to consider carefully the likelihood of success before bringing an action, and similarly encourage a defendant to evaluate the same factor in determining how to proceed once an action is filed. We reject the argument that section 768.56 so deters the pursuit of medical malpractice claims that it effectively denies access to the courts to either party in malpractice actions. We find that an award of attorney fees to the prevailing party is "a matter of substantive law properly under the aegis of the legislature," in accordance with the long-standing American Rule adopted by this Court. See Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 504 (Fla. 1982). See also Campbell v. Maze, 339 So.2d 202 (Fla. 1976); Codomo v. Emanuel, 91 So.2d 653 (Fla. 1956). As difficult as the resulting application of this statute may be in certain cases, we conclude that section 768.56 is constitutional.

Computing a Reasonable Attorney Fee.
Through its enactment of section 768.56, the legislature has given the courts of this state the responsibility to award "reasonable" attorney fees in medical malpractice cases. In the instant case, the trial judge set an amount for the fee pursuant to section 768.56, but expressed uncertainty as to whether his computation was correct under the statute and reserved jurisdiction for further argument on the proper method of computing the fee.
Recently, partially because of the substantial increase in the number of matters in which courts have been directed by statute to set attorney fees, great concern has been focused on a perceived lack of objectivity and uniformity in court-determined reasonable attorney fees. Some time ago, this Court recognized the impact of attorneys' fees on the credibility of the court system and the legal profession when we stated:
There is but little analogy between the elements that control the determination of a lawyer's fee and those which determine the compensation of skilled craftsmen in other fields. Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that. It brings the court into disrepute *1150 and destroys its power to perform adequately the function of its creation.
Baruch v. Giblin, 122 Fla. 59, 63, 164 So. 831, 833 (1935).
Although the amount of an attorney fee award must be determined on the facts of each case, we believe that it is incumbent upon this Court to articulate specific guidelines to aid trial judges in the setting of attorney fees. We find the federal lodestar approach, explained below, provides a suitable foundation for an objective structure. See Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973) and 540 F.2d 102 (3d Cir.1976) (Lindy II); City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir.1974) and 560 F.2d 1093 (2d Cir.1977) (Grinnell II); Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575 (5th Cir.1980). See also Derfner; Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 Pa.L.Rev. 281 (1977); Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473 (1981).
In determining reasonable attorney fees, courts of this state should utilize the criteria[5] set forth in Disciplinary Rule 2-106(b) of The Florida Bar Code of Professional Responsibility:[6]
(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
The first step in the lodestar process requires the court to determine the number of hours reasonably expended on the litigation. Florida courts have emphasized the importance of keeping accurate and current records of work done and time spent on a case, particularly when someone other than the client may pay the fee. See M. Serra Corp. v. Garcia, 426 So.2d 1118 (Fla. 1st DCA), review denied, 434 So.2d 887 (Fla. 1983); Brevard County School Board v. Walters, 396 So.2d 1197 (Fla. 1st DCA 1981). To accurately assess the labor involved, the attorney fee applicant should present records detailing the amount of work performed. Counsel is expected, of course, to claim only those hours that he could properly bill to his client. Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary. The "novelty and difficulty of the question involved" should normally be reflected by the number of hours reasonably expended on the litigation.
The second half of the equation, which encompasses many aspects of the representation, requires the court to determine a reasonable hourly rate for the services of the prevailing party's attorney. In establishing this hourly rate, the court should assume the fee will be paid irrespective of the result, and take into account all of the Disciplinary Rule 2-106 factors except *1151 the "time and labor required," the "novelty and difficulty of the question involved," the "results obtained," and "[w]hether the fee is fixed or contingent." The party who seeks the fees carries the burden of establishing the prevailing "market rate," i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services.
The number of hours reasonably expended, determined in the first step, multiplied by a reasonable hourly rate, determined in the second step, produces the lodestar, which is an objective basis for the award of attorney fees. Once the court arrives at the lodestar figure, it may add or subtract from the fee based upon a "contingency risk" factor and the "results obtained."
The contingency risk factor is significant in personal injury cases. Plaintiffs benefit from the contingent fee system because it provides them with increased access to the court system and the services of attorneys. Because the attorney working under a contingent fee contract receives no compensation when his client does not prevail, he must charge a client more than the attorney who is guaranteed remuneration for his services. When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee. However, because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award: "Were the rule otherwise, courts would find themselves as instruments of enforcement, as against third parties, of excessive fee contracts." Trustees of Cameron-Brown Investment Group v. Tavormina, 385 So.2d 728 (Fla. 3d DCA 1980); see also Kaufman & Broad Home Systems, Inc. v. Sebring Airport Authority, 366 So.2d 1230 (Fla. 2d DCA 1979); Universal Underwriters Insurance Co. v. Gorgei Enterprises, Inc., 345 So.2d 412 (Fla. 2d DCA 1977). Further, in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client. Cf. Rosenberg v. Levin, 409 So.2d 1016 (Fla. 1982). Based on our review of the decisions of other jurisdictions and commentaries on the subject, we conclude that in contingent fee cases, the lodestar figure calculated by the court is entitled to enhancement by an appropriate contingency risk multiplier in the range from 1.5 to 3. When the trial court determines that success was more likely than not at the outset, the multiplier should be 1.5; when the likelihood of success was approximately even at the outset, the multiplier should be 2; and, when success was unlikely at the time the case was initiated, the multiplier should be in the range of 2.5 and 3.
The "results obtained" may provide an independent basis for reducing the fee when the party prevails on a claim or claims for relief, but is unsuccessful on other unrelated claims. When a party prevails on only a portion of the claims made in the litigation, the trial judge must evaluate the relationship between the successful and unsuccessful claims and determine whether the investigation and prosecution of the successful claims can be separated from the unsuccessful claims. In adjusting the fee based upon the success of the litigation, the court should indicate that it has considered the relationship between the amount of the fee awarded and the extent of success.
In determining the hourly rate, the number of hours reasonably expended, and the appropriateness of the reduction or enhancement factors, the trial court must set forth specific findings. If the court decides to adjust the lodestar, it must state the grounds on which it justifies the enhancement or reduction. In summary, in computing an attorney fee, the trial judge should (1) determine the number of hours reasonably expended on the litigation; (2) determine the reasonable hourly rate for this type of litigation; (3) multiply the result of (1) and (2); and, when appropriate, (4) adjust the fee on the basis of the contingent *1152 nature of the litigation or the failure to prevail on a claim or claims. Application of the Disciplinary Rule 2-106 criteria in this manner will provide trial judges with objective guidance in the awarding of reasonable attorney fees and allow parties an opportunity for meaningful appellate review.
We affirm the order of the trial court finding section 768.56 to be constitutional, but, because this record is silent as to when the cause of action accrued, we remand for a determination as to whether the section can be applied in light of this Court's decision in Young v. Altenhaus. If the cause of action accrued subsequent to July 1, 1980, the trial court is directed to hold a new evidentiary hearing for the purpose of determining a reasonable fee in this case consistent with the appropriate factors and guidelines set forth in this opinion.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN, McDONALD and SHAW, JJ., concur.
EHRLICH, J., did not participate in the consideration of this case.
NOTES
[1] Art. V, § 3(b)(5), Fla. Const.
[2] Article I, section 25, provides: "The Courts shall be open to every person, for redress of any injury, and justice shall be administered without sale, denial or delay."
[3] See, e.g., Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501 (Fla. 1982); Sunbeam Enterprises, Inc. v. Upthegrove, 316 So.2d 34 (Fla. 1975); Codomo v. Emmanuel, 91 So.2d 653 (Fla. 1956).

See also section 2.01, Florida Statutes (1983), which provides:
The common and statute laws of England which are of a general and not of a local nature ... down to the 4th day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the Legislature of this state.
[4] See, e.g., § 61.181(5)(b), Fla. Stat. (Supp. 1984) (alimony and child support enforcement); § 77.28, Fla. Stat. (1983) (garnishment); § 718.303, Fla. Stat. (Supp. 1984) (condominium actions); § 725.07, Fla. Stat. (1983) (credit discrimination actions); § 742.031, Fla. Stat. (1983) (paternity determinations); § 376.313, Fla. Stat. (Supp. 1984) (pollution damage actions); § 119.12, Fla. Stat. (Supp. 1984) (Public Records Act enforcement); § 440.39(3)(a), Fla. Stat. (Supp. 1984) (workers' compensation actions); § 64.081, Fla. Stat. (1983) (partition actions). Congress has also enacted numerous provisions for the payment of attorney fees. As of 1977, there were at least 75 federal statutory grants of authority to award attorney fees. Berger, Court Awarded Attorneys' Fees: What is "Reasonable"?, 126 U.Pa.L.Rev. 281, 303 (1977). See, e.g., 42 U.S.C. § 1988, which provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."
[5] These factors are essentially the same as those considered by the federal courts in setting reasonable attorneys' fees. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). The United States Supreme Court has sanctioned the use of the Johnson factors by federal courts. See Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).
[6] Identical factors are contained in the proposed revision of the Code of Professional Responsibility of The Florida Bar currently under consideration.