573 So.2d 876 (1990)
ORLANDO REGIONAL MEDICAL CENTER, INC., et al., Appellants/Cross-Appellees,
v.
Boleslaus J. CHMIELEWSKI, et al., Appellees/Cross-Appellants.
Nos. 89-691, 89-790, 89-797 and 89-885.
District Court of Appeal of Florida, Fifth District.
December 6, 1990.
Rehearings Denied February 4, 1991.
*878 H. Scott Bates of Mateer, Harbert & Bates, P.A., Orlando, for appellant/cross-appellee Orlando Regional Medical Center.
J. Charles Ingram of Hannah, Marsee, Beik & Voght, P.A., Orlando, for appellant/cross-appellee William K. Bott, M.D.
Geoffrey D. Ringer and Barbara A. Flanagan of Maguire, Voorhis & Wells, P.A., Orlando, for appellee/cross-appellant Hood.
Jack B. Nichols, Orlando, for appellees/cross-appellants Boleslaus and Carolyn Chmielewski.
W. SHARP, Judge.
The Orlando Regional Medical Center, Inc. (ORMC) appeals from a final judgment entered after a jury trial, which awarded $54,675 to Boleslaus Chmielewski in a medical malpractice claim and $23,687 to his wife, Carolyn, for her loss of consortium claim. This appeal was consolidated with appeals and cross appeals from a later judgment in the same cause which awarded the Chmielewskis costs and attorney's fees. We affirm the trial court in all regards, except its calculation of the attorney's fee award, which was limited by the terms of the contingency fee contract pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985) and Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
The record establishes that in October of 1984, Boleslaus received a puncture wound to the bottom of his foot when he inadvertently stepped on an anchor bolt in his utility shed. The bolt pierced the rubber sole of his shoe and embedded a piece in the wound. Carolyn insisted that he obtain medical treatment for the injury. Boleslaus decided he wanted to go to the emergency room at ORMC because it was the closest hospital to their home.
The Chmielewskis waited for treatment in the ORMC emergency room a considerable time. Finally, Boleslaus was seen by an emergency room physician, Dr. Aparicio. The doctor looked at the wound, but failed to get a complete history and did not check inside Boleslaus' foot for any embedded foreign object. He referred Boleslaus to Dr. Hood and a nurse cleaned and bandaged the injury.
Unfortunately, Dr. Hood, as well as Dr. Brooks, another doctor who ex-rayed and treated Boleslaus, failed to discover the bit of foreign matter in Boleslaus' foot. It never healed, and remained inflamed and infected. In November, Dr. Bott removed the fourth metatarsal of the foot, which had deteriorated due to osteomyelitis. Not until the following February was the piece of rubber in the foot discovered and removed. Thereafter Boleslaus' foot healed and he was finally discharged from care some seven months after the initial puncture wound was received.
The Chmielewskis sued ORMC and the three doctors, Hood, Brooks, and Bott. The jury found ORMC was 77 percent liable, Hood was 18 percent liable, and Boleslaus was 5 percent liable for his injuries. It returned a not liable verdict for Dr. Bott. Damages in the amount of $54,675 were found for Boleslaus and $23,687 for Carolyn on her claim for loss of consortium. After the judgment was rendered, a settlement was reached with Dr. Hood and Dr. Brooks. The only defendant/appellant remaining in this proceeding is ORMC.

I. MAIN APPEAL BY ORMC
In its appeal from the judgment, ORMC argues it was entitled to a directed verdict on the issue of apparent agency. The hospital's liability was based solely on its vicarious liability for Dr. Aparicio's treatment of Boleslaus' wound in the emergency room. The hospital established that Dr. Aparicio was not its employee, nor did the Chmielewskis rely on any express representation by ORMC that Dr. Aparicio was the hospital's agent or employee.
*879 The record established, without dispute, that ORMC made no express representations to the public or to the Chmielewskis, positive or negative, concerning Dr. Aparicio's employee status. The Chmielewskis assumed he worked for ORMC because he was furnished to them once they arrived in ORMC's emergency room. There were no signs or notices to inform them that Dr. Aparicio worked for Duplis & Associates, a professional association that contracted with ORMC to provide doctors in ORMC's emergency room. Boleslaus testified that even if he had known Aparicio was not employed by ORMC, he probably would have allowed Aparicio to treat him.
Pursuant to its license and various administrative directives, ORMC is required to have an emergency room staffed with doctors. It provides all of the forms, equipment and nurses for the emergency room, and it handles all of the billings and collections. It paid Duplis & Associates a percentage of the collections, and the association in turn paid Dr. Aparicio a salary.
Under similar circumstances, Florida courts have held cases should go to the jury for a determination of vicarious liability on the part of the hospital for the malpractice of emergency room physicians on the theory of apparent agency. See Irving v. Doctors Hospital of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA), rev. denied, 422 So.2d 842 (Fla. 1982); Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982). The Irving court relied upon Restatement (Second) of Agency, section 267 (1958), as well as Restatement (Second) of Torts, section 429 (1965).
These Restatements provide:
One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.
Restatement (Second) of Agency § 267 (1958).
One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for the physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.
Restatement (Second) of Torts § 429 (1965).
ORMC argues that even if the circumstances in this case[1] were sufficient to establish an implied representation to Boleslaus that Dr. Aparicio was its employee or agent, the appellees failed to establish the two additional, required elements for liability: actual reliance on the representation; and detriment or injury received because of the reliance. See Hathaway v. Tindall, 497 So.2d 1272 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1041 (Fla. 1987), Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981), affirmed, Orlando Executive Park v. Robbins, 433 So.2d 491 (Fla. 1983). No facts are set out in Hathaway, so that case is of little value as precedent.
Orlando Executive involved the vicarious liability of a national franchisor (Howard Johnson's) for injuries suffered by a patron of a Howard Johnson's franchisee's facility, due to lack of security precautions on the premises. The elements of reliance and detriment were established in that case by merely showing the guest booked at that inn because of the national name and reputation, and entered the motel as a guest.
In this case, it was shown without dispute that the Chmielewskis came to the ORMC emergency room because of ORMC's name and reputation as a hospital and that Boleslaus allowed himself to be treated there. The injuries he suffered (if causally connected to the treatment he received) were clearly a "detriment." These additional elements of reliance and detriment appear to us to be subsumed in the scenario of proof in this cause, justifying the trial court's refusal to direct a verdict *880 for ORMC. See Arango v. Reyka, 507 So.2d 1211 (Fla. 4th DCA 1987); Mehlman v. Powell, 281 Md. 269, 378 A.2d 1121 (Md. 1977).
However, we note that the Restatement (Second) of Torts quoted above requires no separate proof of "reliance" and "detriment," and further that illustration three of the comments to Restatement (Second) of Agency, section 267 (1958), also does not require these elements, in addition and apart from the initial representation:
Illustration 3: L, a department store, contracts with T, as an independent contractor to give medical attention to patrons of the store, T appearing as an employee of D. D is liable for negligent medical care rendered by T.
The fact of seeking medical treatment in a hospital emergency room and receiving treatment from a physician working there is sufficient. Arthur v. St. Peters Hospital, 169 N.J. Super. 575, 405 A.2d 443 (Law Div. 1979); Mduba v. Benedictine Hospital, 52 A.D.2d 450, 384 N.Y.S.2d 527 (N.Y. App. Div. 1976).
ORMC also argues that the instruction given by the trial judge on apparent agency was contrary to Florida law in various particulars and amounted in this case to directing a verdict on the issue of vicarious liability. We are unable to fully address this point on appeal because a copy of the disputed instruction was not included in the record and the transcript does not contain the part of the proceeding in which the judge read the instruction to the jury. Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979).
The jury was apparently instructed on nonliability for an independent contractor and on the apparent agency exception. The parties agreed to a jury instruction which began with Florida Standard Jury Instruction 3.3b(2) followed by the bracketed independent contractor instruction of 3.3b(1). In addition, the Chmielewskis requested and ORMC objected to an additional instruction taken almost verbatim from Irving.
In addition control and domination need not be actual but may be binding upon principal or employer if apparent. That is if the principal or employer has held the agent or employee out to the public as being possessed of the requisite authority, and the third person is aware of his authority and has relied on it to his detriment, then the principal or employer is estopped from denying the agency relationship.
One who undertakes to do for another a given thing cannot excuse himself to the other for a faulty performance, or a failure to perform, by showing that he has engaged another to perform in his place, and that the fault or failure is that of another of independent contractor.
Even if you were to find that Dr. Aparicio was an independent contractor, the hospital would nevertheless be responsible for any negligence on his part if Mr. Chmielewski went to the hospital for hospital treatment and the Defendant hospital undertook to treat him for a charge and to furnish doctors and staff to render that treatment.
As the court did in Irving, we note that this instruction is essentially a correct statement of the law, although to some extent it may constitute an impermissible comment on the evidence. But no objections on those or other grounds asserted on appeal were made at trial. ORMC first objected because the Chmielewskis did not plead an avoidance of ORMC's independent contractor affirmative defense.
Secondly, ORMC objected because the third paragraph of the instruction was not a correct statement of the law as "put" in Irving. When the court inquired what statement was incorrect, counsel for ORMC responded:
I put my objection on the record. Just give it. Let's get going. Just give it. I don't want to argue anymore.
It would appear any other objections were waived, and the ones asserted on appeal were not preserved.
ORMC also argues that the award of $10,000 past damages and $13,687 future damages to Carolyn Chmielewski for loss of consortium were excessive and that the trial court should have granted its motion for remittitur. The record on appeal does not include testimony given by the *881 Chmielewskis' daughter and son-in-law, nor testimony by a visiting nurse who attended Boleslaus at home between his frequent hospitalizations while his infection persisted. That alone makes reversal on this point problematical. If an appellant thinks the record as a whole does not support a finding or portion of a judgment, the whole of the record must be produced in the appellate court. The burden and duty of bringing a record sufficient to demonstrate error is on the appellant. Applegate.
The testimony of the Chmielewskis, which is in the record on appeal, demonstrates some basis for the award. Carolyn testified her husband was completely disabled, either in their home or in the hospital from October 7, 1984 when the injury occurred, through April 23, 1985, when he was finally healed and discharged. She herself was ill, and needed, but did not have, his assistance for ordinary household tasks. After he was healed, the bone loss in his foot makes it impossible for them to engage in various activities they formerly enjoyed together  dancing and walking about window-shopping.
The category of damages for loss of consortium is necessarily a vague and subjective one left largely to the discretion of the jury. It is intended to compensate the spouse of an injured person for past and future loss of such intangibles as love, sex, companionship, society, comfort and solace, and help in performing one's tasks about the household. See generally, Measure of Elements of Damages in Wife's Action for Loss of Consortium, 74 A.L.R.3d 805; White Construction Co., Inc. v. Dupont, 430 So.2d 915 (Fla. 1st DCA 1983), affirmed in part, quashed in part, 455 So.2d 1026 (Fla. 1984).
In White, an award of $1,075,000 to a wife for loss of consortium damages was held excessive. There was nothing other than intangibles to explain the size of the award. However, in this case, the award is less than 1/40th of the amount in White. The trial judge also rejected appellant's motion for remittitur. See Lassitter v. International Union of Operating Engineers, 349 So.2d 622 (Fla. 1976). The sum awarded in this case does not appear to us as being so excessive and outrageous as to exceed the maximum limit of a reasonable range within which the jury was properly operating. Lassitter. See also Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978).
ORMC finally argues the trial court erred in failing to direct a verdict for the hospital because the Chmielewskis failed to produce competent evidence from which the jury could have concluded that leaving the bit of rubber sole in Boleslaus' foot caused his chronic infection, bone loss, and failure of his foot to heal properly. One specialist for ORMC testified Boleslaus did not get osteomyelitis from the bit of rubber shoe sole in the wound. All medical witnesses agreed osteomyelitis destroyed the metatarsal bone in Boleslaus' foot and caused the prolonged infection.
However, Dr. Schreck testified he was absolutely certain the osteomyelitis came from the foreign body. He based this in part on the history of the case, which had been presented to the jury:
Actually the facts tell you what happened. He got better; never had another recurring infection after the foreign body was removed.
We think there was sufficient evidence of proximate cause to carry this case to the jury.

II. APPEAL AND CROSS-APPEAL ON AWARD OF ATTORNEY'S FEES AND COSTS
The Chmielewskis sought an award totalling $141,000 for attorney's fees under the "prevailing party" mandate of section 768.56, Florida Statutes (1983), governing medical malpractice suits.[2] The statute provided that "[t]he court shall award a reasonable attorney's fee to the prevailing party in any civil action."
In its judgment awarding costs and attorney's fees, the trial court found that a reasonable fee for appellees would have *882 been $75,000, but since the jury found Boleslaus was 5 percent comparatively negligent, and since the Chmielewski's contingency fee contract with their attorney limited the fee to 45 percent of their recovery, the largest attorney's fee he could award was $42,750. ORMC argues that proper computation of the attorney's fee award would limit it to $34,017.40. We agree.
In this case, the Chmielewskis and their attorney entered into a contingency fee contract pursuant to which the attorney would be compensated by a fee of 45 percent of the total recovery if post-trial work were necessary. There was no additional language in the contract permitting recovery of a reasonable attorney fee, if awarded and if greater than the agreed percentage of the total gross award. Compare, Kaufman v. MacDonald, 557 So.2d 572 (Fla. 1990); Florida Patient's Compensation Fund v. Moxley, 545 So.2d 922 (Fla. 4th DCA 1989), affirmed in part, quashed in part, 557 So.2d 863 (Fla. 1990); Tallahassee Memorial Regional Medical Center, Inc. v. Poole, 547 So.2d 1258 (Fla. 1st DCA 1989), rev. denied, 558 So.2d 19 (Fla. 1990); Florida Patient's Compensation Fund v. Wasser, 545 So.2d 924 (Fla. 4th DCA 1989), affirmed in part, quashed in part sub nom. Wilson v. Wasser, 562 So.2d 339 (Fla. 1990). The absence of those three little words is fatal to the cross-appellants' position.
In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), the Florida Supreme Court set forth the rules and guidelines which must be followed by trial courts in setting reasonable attorney's fees pursuant to section 768.56. It said that not withstanding determination of a lodestar amount and a possible increase based on risk of nonpayment and/or results, "in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client."
In Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), the court refined some of the rules set out in Rowe. In the second category of cases (torts and contracts), the court said the trial court should consider using a multiplier in setting an attorney fee award, if the risk of nonpayment is established. But it reaffirmed the rule in Rowe regarding limiting fees to the contracted sums:
The caps discussed in Rowe and explained in this opinion remain applicable in this category... .
We thus conclude that under Rowe and Quanstrom, in this medical malpractice case cross-appellants are limited to recovering 45 percent of their gross award. World Service Life Insurance Co. v. Bodiford, 537 So.2d 1381 (Fla. 1989); Miami Children's Hospital v. Tamayo, 529 So.2d 667 (Fla. 1988); North Shore Medical Center, Inc. v. Kennedy, 554 So.2d 8 (Fla. 3d DCA 1989), rev. denied, 563 So.2d 632 (Fla. 1990). See also Perez-Borroto v. Brea, 544 So.2d 1022 (Fla. 1989) (noncontingency contract). Cases involving recovery of a reasonable attorney fee for a prevailing party which fall under a different category as set forth in Rowe, may not be so limited, but they are distinguishable. See, e.g., D & A Excavating Service, Inc. v. J.I. Case Co., 555 So.2d 1256 (Fla. 4th DCA 1989); Hatcher v. B.K. Roberts, 538 So.2d 1300 (Fla. 1st DCA), rev. denied, 551 So.2d 461 (Fla. 1989); Wright v. Acierno, 437 So.2d 242 (Fla. 5th DCA 1983).
In this case, the jury returned a total award of $78,362. That total must be reduced by the 5 percent comparative negligence factor found by the jury to arrive at the gross award ($78,362 - $3,918.10 = $74,443.90). The attorney's fee in this case was capped at 45 percent of the gross recovery: $34,499.76. Appellants are also entitled to interest at 12 percent from date of the verdict to date of the fee hearing (47 days) on $34,499.76: $533.09.
In their cross appeal, the Chmielewskis also argue they should have been awarded prejudgment interest on taxable costs, reimbursement for mediation expenses, and expert witness fees for the attorney witness who testified for them on *883 a reasonable attorney's fee award. We agree with the trial judge that prejudgment interest on costs is not available under Florida's current case law. See Argonaut Insurance Co. v. May Plumbing Co., 474 So.2d 212 (Fla. 1985). Although reasonable costs and expenses for a statutorily required mediation procedure are available,[3] appellants failed to establish that they were required to submit to mediation in this case under any statute or court rule.
We also affirm the trial court's refusal to award expert witness fee costs for the attorney witness because the record does not demonstrate error. Expert witness fees may be awarded in the trial court's discretion, in complex cases when the preparation for testifying is lengthy and burdensome. Travieso v. Travieso, 474 So.2d 1184 (Fla. 1985). However, here the attorney witness said he spent only three hours looking at the file and he made it a "cursory review."
In its appeal, ORMC argues the trial court erred by taxing the costs of certain depositions against it because only one was read at trial, and of that, less than twenty pages were published to the jury. Pursuant to Statewide Uniform Guidelines for the Taxation of Costs in Civil Action, Administrative Order, 7 F.L.W. 517 (Fla. 1981), section 1(e), the costs of depositions not used at trial may be taxed, if the prevailing party can show the taking of the deposition was "reasonably necessary." As the trial court said, "reasonably necessary" does not mean the deposition had to be used at the trial or quoted to the jury. The trial judge has broad discretion in these matters. We cannot agree with ORMC that the record demonstrates error here. See St. Lucie County v. Browning, 358 So.2d 253 (Fla. 4th DCA 1978); Fatolitis v. Fatolitis, 271 So.2d 227 (Fla. 2d DCA 1973). Similarly, we think awards for expert witness fees for two medical experts who were deposed, but who did not appear at trial, were within the trial court's discretion. See Avellone v. Mehta, 544 So.2d 1122 (Fla. 3d DCA 1989).
ORMC also argues the trial court erred in awarding an expert witness fee for appellees' doctor witnesses. Dr. Schreck travelled from New Jersey to testify. The trial court disallowed certain of Dr. Schreck's travel-related costs and reduced the fee requested from $5,600 to $4,000. The trial court also awarded $2,500 for appellees' other medical witness, Dr. Herbertson, even though the time slips in the record to document his service, failed to break down the allocation of his time. However, the trial court compared the length of time Dr. Herbertson testified with the other medical experts, and allocated a fee he thought was reasonable. On both fee awards, we think the trial court must be affirmed. See Thursby v. Reynolds Metals Co., 466 So.2d 245 (Fla. 1st DCA 1984), rev. denied, 476 So.2d 676 (Fla. 1985).
Finally, ORMC objects to the taxation of approximately $5,500 for appellees' expenses for preparation of demonstrative aids. The trial courts should keep a reasonable lid on such costs. Loftin v. Anderson, 66 So.2d 470 (Fla. 1953). These sums appear on the high side to us. But the trial court said the costs of such exhibits are "difficult to assess" and they were useful at trial because "to a certain degree we are in an educational process, particularly in medical malpractice cases." No counter showing of what a lesser, more reasonable cost would be for these aids was attempted by ORMC. Accordingly, we conclude no error was demonstrated by this record.
Therefore, the judgments appealed are affirmed; this cause is remanded solely for an award of attorney's fees pursuant to this opinion.
AFFIRMED in part; REVERSED and REMANDED in part.
COWART and GRIFFIN, JJ., concur.
NOTES
[1] See Thomkin Corporation v. Miller, 156 Fla. 388, 24 So.2d 48 (Fla. 1945).
[2] This statute was repealed effective October 1, 1985, but it controls this cause since the acts of malpractice for which ORMC was sought to be held vicariously liable occurred in 1984. Pysz v. Ande, 523 So.2d 698 (Fla. 4th DCA 1988); Florida Patient's Compensation Fund v. Scherer, 558 So.2d 411 (Fla. 1990); Couch v. Drew, 554 So.2d 1185 (Fla. 1st DCA 1989), affirmed, 565 So.2d 1354 (Fla. 1990).
[3] See Ledbetter v. Todd, 418 So.2d 1116 (Fla. 5th DCA 1982).