916 So.2d 871 (2005)
Perry MOORE, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 2D04-5123.
District Court of Appeal of Florida, Second District.
November 2, 2005.
Rehearing Denied January 5, 2006.
*873 Richard A. Kupfer of Richard A. Kupfer, P.A., West Palm Beach, for Appellant.
Karen A. Barnett of Barnett & Associates, P.A., Miami; and Dorothy Venable DiFiore of Gallagher & Howard, P.A., Tampa, for Appellee.
PER CURIAM.
Perry Moore appeals the final order awarding attorney's fees in his action for no-fault benefits against his insurer, State Farm Mutual Automobile Insurance Company. After awarding Moore only a portion of the attorney's fees he sought, the county court certified the following question as one of great public importance:
MAY A NO-FAULT PLAINTIFF RECOVER A STATUTORY ATTORNEY'S FEE UNDER A FEE AGREEMENT BETWEEN A PARTY AND HIS COUNSEL IN WHICH IT IS NOT SPECIFICALLY SET FORTH THAT THERE IS A DIFFERENCE IN COMPENSATION FOR TWO DIFFERENT TYPES OF CASES?
We have jurisdiction. See Fla. R.App. P. 9.030(b)(4)(A). Having reviewed the entire record and the parties' arguments, we rephrase the certified question to read as follows:
MAY AN ATTORNEY AND CLIENT ENTER INTO A SINGLE PERSONAL INJURY REPRESENTATION AGREEMENT THAT INCLUDES ONE FEE AGREEMENT FOR A NEGLIGENCE CASE AGAINST A TORTFEASOR AND A SEPARATE AND INDEPENDENT FEE AGREEMENT FOR A BREACH OF CONTRACT CASE AGAINST THE CLIENT'S INSURANCE CARRIER WITHOUT HAVING AN AWARD OF FEES UNDER ONE AGREEMENT LIMITED BY THE OTHER?
We answer the rephrased question in the affirmative, reverse the award of fees entered by the trial court, and remand for further proceedings.

*874 Facts
Moore was injured in an auto accident in 1994. In 1996, Moore retained attorney Wendy Coxhead to represent him in seeking redress for his injuries. In doing so, Moore signed a document entitled "Personal Injury Fee Agreement," which was prepared by Ms. Coxhead. This "Personal Injury Fee Agreement" contained seven subsections which, when considered together, dealt with all aspects of Ms. Coxhead's representation of Moore.
Two of these subsections dealt with the amount of attorney's fees to which Ms. Coxhead would be entitled should Moore prevail in his claims. The first of these was entitled "Agreed Attorney Fees," and it set forth the standard percentage-of-recovery formula for attorney's fees permitted by The Florida Bar. See R. Regulating Fla. Bar 4-1.5(f)(4)(B). The second subsection was a more specific provision dealing solely with the issue of attorney's fees for seeking payment of no-fault benefits under a policy of automobile insurance. This provision, entitled "No Fault Law Attorney Fees," stated as follows:
NO FAULT LAW ATTORNEY FEES
I understand that the firm will assist in collecting benefits under Florida's No-Fault law without the payment of any additional fees unless it is necessary for the firm to file suit to collect benefits. If the firm files suit, I agree that they will be entitled to any attorney's fee determined to be reasonable by the court and paid by the insurance company or other company providing no-fault benefits and that I will owe them no additional fee for such representation other than the fee awarded by the court to be paid out of the no-fault benefits.
After State Farm refused to pay certain no-fault benefits to Moore, he filed suit. Ultimately, State Farm agreed to settle Moore's no-fault claim for $500. Moore then sought attorney's fees pursuant to the "No Fault Law Attorney Fees" subsection of his agreement with Ms. Coxhead. In doing so, Moore contended that under this subsection he was entitled to a reasonable fee as determined by the court pursuant to section 627.428, Florida Statutes (1995).
In opposition to Moore's motion, State Farm argued that while Moore might be entitled to a fee pursuant to section 627.428, the amount of such fee was limited to the specified percentage of the settlement amount provided by the "Agreed Attorney Fees" subsection of the representation agreement. In making this argument, State Farm relied on Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990), for the proposition that a court-awarded statutory fee cannot exceed the amount otherwise permitted under the fee agreement between the attorney and client. Despite Moore's argument that the general "Agreed Attorney Fees" subsection of his agreement with Ms. Coxhead did not apply to his action against State Farm for no-fault benefits, the trial court limited Moore's attorney's fee award to a percentage of the $500 settlement he had already recovered.
In discussing the question to be certified with the county court, State Farm conceded that the representation agreement between Moore and Ms. Coxhead contained two subsections dealing with attorney's fees and that the agreement appeared to contemplate that at least two different types of cases might be pursued under the single agreement. However, State Farm contended that the language of the representation agreement could not "trump" the law that the amount of the statutory fee could not exceed the amount otherwise recoverable under the agreement. Because the county court could not *875 find any clear guidance on the issue of a single representation agreement containing multiple potential fee awards, it certified the question to this court.

Certified Question
At its essence, the question posed by the county court is whether an attorney and client can enter into a single representation agreement in a personal injury case that anticipates multiple potential causes of action and includes provisions for different types of fee awards for each of those causes of action with each fee provision operating independently of the others. The answer to this question is undeniably yes.
Fee agreements between attorneys and clients are governed by the law of contracts. See, e.g., Lugassy v. Indep. Fire Ins. Co., 636 So.2d 1332, 1335 (Fla. 1994); Lyle v. Lyle, 167 So.2d 256 (Fla. 2d DCA 1964); Universal Beverages Holdings, Inc. v. Merkin, 902 So.2d 288, 290 (Fla. 3d DCA 2005). Nothing in the law of contracts requires a separate written document for each individual agreement between the parties. Contracts are entered into every day in this state which contain numerous individual agreements between the contracting parties, each of which is a separate "mini-contract" on a specific issue. Thus, contract law does not prohibit an attorney and client from entering into a single representation agreement in a personal injury case that provides one type of fee award for a negligence case against a tortfeasor and a separate and independent type of fee award for a breach of contract case against the client's insurance carrier.
Assuming such a representation agreement exists, the next question is whether an award of fees under one section of the agreement can properly be limited by the fees that might be recoverable under a separate section of the agreement. The answer to this question is undeniably no.
As one federal court has stated:
The basic rule of contract construction gives priority to the intention of the parties. In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein. Moreover, the meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such an inference runs counter to the agreement's overall scheme or plan.
Rafos v. Outboard Marine Corp., 1 F.3d 707, 709 (8th Cir.1993) (quoting E.I. du Pont de Nemours & Co. v. Shell Oil Co., 498 A.2d 1108, 1113 (Del.1985) (en banc) (citations omitted)). Similarly, Florida courts have held that the intention of the parties must be determined from an examination of the entire contract and not from separate phrases or paragraphs. See Lalow v. Codomo, 101 So.2d 390, 393 (Fla. 1958); Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313, 315 (Fla. 2d DCA 1963); Specialized Mach. Transp., Inc. v. Westphal, 872 So.2d 424 (Fla. 5th DCA 2004). When it is clear from the language or overall scheme or plan of a contract that the parties intended for various provisions to operate independently of each other, the court must enforce the contract as written. See Paddock, 154 So.2d at 316 ("It is not within the power of a court to make a contract for the parties, and an unambiguous agreement must be enforced in accordance with its terms.").
Applying these basic principles of contract law, we hold that when a single representation agreement includes one fee agreement pertaining to a negligence case against a tortfeasor and a separate and independent fee agreement pertaining to a breach of contract case against the client's insurance carrier, the court must enforce *876 those fee agreements as written. The court may not essentially rewrite the parties' agreement by intermingling the terms of the independent fee provisions and limiting an award of fees against the client's insurance carrier to the percentage of recovery that would apply in a successful case against the tortfeasor. Accordingly, we answer the rephrased certified question in the affirmative.

This Case
Having obtained jurisdiction over this case by virtue of the certified question, we have jurisdiction to consider all appealable issues raised by the final judgment. § 34.017(4)(a), Fla. Stat. (2004). Because the issues in this appeal deal solely with the interpretation of the fee agreement between Moore and Ms. Coxhead, our standard of review is de novo. In re Guardianship of Sapp, 868 So.2d 687, 691 (Fla. 2d DCA 2004) ("It is well-settled that when entitlement to attorney's fees is based on the interpretation of contractual provisions as a pure matter of law, an appellate court will undertake a de novo review to determine the appropriate construction of the contract.") (quoting Stevens v. Zakrzewski, 826 So.2d 520, 521 (Fla. 4th DCA 2002)).
Moore's position throughout this litigation has been that he entered into a representation agreement with Ms. Coxhead anticipating the possibility of her representing him in a negligence action against the tortfeasor and in a separate breach of contract action against State Farm for no-fault benefits. His position has been that the representation agreement contained separate subsections dealing with the fees that Ms. Coxhead would earn for each type of case and that he anticipated that she could collect one fee for a negligence action and a separate fee should a no-fault action be required. We agree with Moore that the language of the representation agreement reflects this intent.
The representation agreement is entitled "Personal Injury Fee Agreement." In one subsection, the agreement contains the language required by The Florida Bar for contingency fee agreements based on a percentage of recovery. See R. Regulating Fla. Bar 4-1.5(f)(4)(B). In a separate subsection of the agreement, Moore and Ms. Coxhead agreed that Ms. Coxhead would assist Moore in obtaining no-fault benefits without any "additional fee" unless she was forced to file suit to collect the benefits. If she was forced to do so, she would be entitled solely to "any attorney's fees determined to be reasonable by the court and paid by the insurance company."
Considering the agreement's overall plan, we find that the representation agreement clearly expresses its intent to have the "Agreed Attorney Fees" subsection apply to a negligence action against the tortfeasor and to have the "No Fault Law Attorney Fees" subsection apply to an action against State Farm for no-fault benefits. At oral argument, State Farm asserted that the representation agreement did not clearly reflect that the parties anticipated anything other than an action against State Farm for no-fault benefits. However, contrary to this assertion, the title of the representation agreement itself reflects the possibility of a personal injury action against a third party  not solely an action for no-fault benefits against State Farm. In addition, the fact that the agreement contains a subsection specifically dealing with attorney's fees should an action for no-fault benefits become necessary reflects the parties' intent to potentially pursue more than simply a personal injury action. Thus, the intent to have the representation agreement apply *877 to multiple potential causes of action is clear from the structure of the agreement itself.
State Farm also asserted that the agreement did not clearly indicate that the two fee subsections were intended to operate independently of each other. We disagree. If we were to accept State Farm's argument that the percentage-of-recovery provisions of the "Agreed Attorney Fees" subsection applied to Moore's action for no-fault benefits, then the provision of the "No Fault Law Attorney Fees" subsection stating that Ms. Coxhead would be entitled to "any attorney's fee determined to be reasonable by the court" if a suit for no-fault benefits was required would be rendered meaningless. We will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so. See Publix Super Mkts., Inc. v. Wilder Corp. of Del., 876 So.2d 652, 654 (Fla. 2d DCA 2004) (holding that courts must "`construe contracts in such a way as to give reasonable meaning to all provisions' rather than leaving part of the contract useless") (quoting Hardwick Props., Inc. v. Newbern, 711 So.2d 35, 40 (Fla. 1st DCA 1998)).
Not to be deterred by the obvious intent of the agreement, State Farm next argues that because the "No Fault Law Attorney Fees" subsection did not define what Moore and Ms. Coxhead meant by a "reasonable fee," the court was required to look to the "Agreed Attorney Fees" subsection to determine how to calculate the intended attorney's fees. This argument fails for two reasons.
First, there was no need for the agreement itself to specify what was meant by a "reasonable fee" as determined by the court. In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1146 (Fla.1985), the Florida Supreme Court adopted the federal lodestar approach for computing reasonable attorney's fees pursuant to the various statutory provisions dealing with prevailing party attorney's fee awards. Thus, a fee agreement which states that the attorney will seek an award of reasonable attorney's fees from the court implicitly incorporates the Rowe holding and its computations. The attorney need not spell out that he or she will be seeking to have the court apply Rowe and its progeny in determining the fee award.
Second, Florida law clearly permits an attorney and client to agree that the only basis for a fee award will be a reasonable fee awarded by the court pursuant to a prevailing party attorney's fee statute. The supreme court recognized this in Quanstrom, in which the court stated:
Quanstrom's attorney agreed to represent her upon the understanding that, if he were successful, he would be entitled to a fee which would be set by the court pursuant to section 627.428, Florida Statutes (1987). Implicit in this arrangement was the understanding that no fee would be paid if the attorney did not prevail. This constituted a contingency fee arrangement even though the amount of the fee was not to be determined by the amount of recovery.
Quanstrom, 555 So.2d at 835. Similarly, in Inacio v. State Farm Fire & Casualty Co., 550 So.2d 92, 96 (Fla. 1st DCA 1989), the court noted:
Certainly, the client and the attorney may agree that the client's obligation to pay a fee will be entirely contingent on prevailing in the suit and effecting a recovery, and the law recognizes that they may agree that the amount of the contingent fee ultimately due to the attorney *878 will be a reasonable amount to be set by the court.
See also State Farm Fire & Cas. Co. v. Palma, 524 So.2d 1035, 1037 (Fla. 4th DCA 1988) (noting that plaintiff's counsel took the case on a contingency fee basis requiring him to prevail in order to be entitled to a fee and that the amount of the fee agreed to under the contract was to be determined by the court).
Under this authority, Moore and Ms. Coxhead could  and apparently did  agree to an arrangement under which Ms. Coxhead would prosecute Moore's no-fault action on a contingent basis under which no fee would be owed unless she was successful in obtaining benefits for him. They could also agree  and again apparently did agree  that the amount of any fee that might be awarded should she be successful would be a "reasonable fee" as determined by the court. Ms. Coxhead was not required to "spell out" either a specific fee amount or the lodestar calculations in her fee agreement with Moore. Rather, it was perfectly proper for them to agree that the fee to which Ms. Coxhead would be entitled in a no-fault action would be solely a "reasonable fee" as determined by the court.
Finally, State Farm argues that, even if the court can award a "reasonable fee" using the lodestar approach, the amount of the fee must nevertheless be limited to the percentage of recovery contained in the "Agreed Attorney Fees" subsection. For this position, State Farm relies on language in the Quanstrom decision, as well as the decision in Orlando Regional Medical Center, Inc. v. Chmielewski, 573 So.2d 876 (Fla. 5th DCA 1990), both of which hold that a court-awarded statutory fee may not exceed the amount specified in the contingency fee agreement unless the contract specifically provides for recovery of whichever amount is greater. While we do not disagree with the decisions in Quanstrom and Chmielewski, their holdings do not apply in this case for two reasons.
First, while Florida law is clear that a court-awarded statutory fee may not exceed the fee contracted for by the parties to the representation agreement, see, e.g., Quanstrom, 555 So.2d at 834; Rowe, 472 So.2d at 1151; Inacio, 550 So.2d at 95, in determining what fee was contracted for by the parties, the court must look to the terms of the fee agreement itself. When the parties do not agree on a specific fee amount or percentage of recovery, but rather agree that the fee will be an amount determined to be reasonable by the court, there is no "cap" on the amount of fees contained within the agreement. Thus, there is no contractual amount that the fee cannot exceed. Rather, it is up to the court to determine the "reasonable" amount of the fee pursuant to Rowe and its progeny.
Second, the cases relied upon by State Farm dealt with fundamentally different factual situations. In the cases cited by State Farm, the party seeking fees had two possible bases for a single award of attorney's fees against the same defendant or defendants. For example, in Chmielewski, the attorney agreed to percentage-of-recovery fee for representing the Chmielewskis in a medical malpractice action against a hospital and certain physicians. In addition, the Chmielewskis were potentially entitled to a statutory attorney's fee under section 768.56, Florida Statutes (1983), should they prevail against these same defendants.[1] Thus, only one potential fee award was at issue. Because the attorney did not contract for the greater of the percentage of recovery or the statutory fee, the court properly "capped" the fee *879 award at the percentage of recovery agreed upon by the parties.
Unlike the situation in Chmielewski, in this case there are not two possible bases for a single award of attorney's fees against a single defendant. Rather, there is one subsection providing a potential attorney's fee award for a negligence action against a tortfeasor and a separate subsection providing for a potential attorney's fee award for a breach of contract action against State Farm. In this type of situation, Moore is not limited to whichever fee award is less. Rather, his fee award is limited by the terms of whichever subsection applies to the fee he is seeking. If Moore was seeking fees in a personal injury action against the tortfeasor, he would be limited to the percentage of recovery specified in the "Agreed Attorney Fees" subsection. Here, however, because Moore is seeking fees in a no-fault action against his own insurance carrier, he is bound by the terms of the "No Fault Law Attorney Fees" provision. That provision provides that attorney's fees will be determined by the court. The only limit on this determination is reasonableness.

Conclusion
In sum, we answer the rephrased certified question in the affirmative and hold that an attorney and client may enter into a single representation agreement that anticipates both a negligence action against the tortfeasor and a breach of contract action against the client's insurance carrier and that provides separate agreements as to the amount of attorney's fees which can be awarded for these different actions. When such a fee agreement exists, the attorney's fees to be awarded for one action cannot be determined by or limited to the amounts that might have been awarded if the parties had brought a different action. Rather, the amount of attorney's fees will be determined based on the provisions of the representation agreement relating to the type of action actually at issue. Because the fee agreement between Moore and Ms. Coxhead clearly provided for an award of a "reasonable fee" to be determined by the court should Moore prevail in a no-fault action against his insurer, we reverse the final order on attorney's fees which limited the fee to a percentage of Moore's no-fault recovery and remand for further proceedings consistent with this opinion.
Certified question answered; reversed and remanded for further proceedings.
VILLANTI and WALLACE, JJ., Concur.
STRINGER, J., Concurs specially.
STRINGER, Judge, Specially concurring.
I agree with resolution of this case based on the rephrased certified question; however, I do not believe that the certified question presented by the parties is one of great public importance as it requires only the application of well-settled contract law principles to the specific representation agreement at issue. Therefore, I would have dismissed this appeal based on jurisdiction having been improvidently granted.
NOTES
[1] This statute was repealed October 1, 1985.