BLACK, Judge,
Dissenting.
When a spouse is awarded zero damages on a loss of consortium claim, the test for granting a new trial is whether the record contained substantial, undisputed evidence of loss of consortium. Hagens v. Hilston, 388 So.2d 1379, 1381 (Fla. 2d DCA 1980). The category of damages for loss of consortium “is necessarily a vague and subjective one left largely to the discretion of the jury.” Orlando Reg’l Med. Ctr., Inc. v. Chmielewski, 573 So.2d 876, 881 (Fla. 5th DCA 1990). In my opinion, because there was disputed evidence of Mr. Peterson’s loss of consortium claim, the trial court did not abuse its discretion in denying the motion for a new trial and the order should be affirmed.
The subject accident resulted in what is commonly referred to as soft tissue or “whiplash” injuries to Mrs. Peterson. As a result of the impact, Mrs. Peterson did not strike anything on the inside of her vehicle, was not knocked unconscious, was not bleeding, had no broken bones, and was able to get out of the vehicle under her own power. She did not go to the emergency room or otherwise seek medical care for several days. She took aspirin and personally drove the accident vehicle home.
As noted by the majority, loss of consortium means more than impairment of the sexual relationship. Here, the jury instructions and verdict form indicate that the jury was asked to consider each aspect of Mr. Peterson’s consortium claim, including services, comfort, society, and attentions. By reviewing these claims individually and analyzing the trial record, it becomes clear that there were either disputed issues of fact or insubstantial claims that justify the jury verdict, as well as the judge’s denial of the new trial motion.
At trial, the defense presented testimony from a board certified orthopedic surgeon, Dr. Steven Knezevich, who opined that because Mrs. Peterson sustained only soft tissue injuries, she would have reached maximum medical improvement within ninety days, should have required no further treatment, and did not sustain a permanent injury. Dr. Knezevich placed *847 no physical restrictions or limitations on Mrs. Peterson’s activities, and he found that she was perfectly capable of working as a housekeeper, which she had been doing both before and after the subject accident. Dr. Knezevich’s testimony contradicted the parties’ testimony and created disputed issues of fact for the jury to determine.
Regarding the claim for diminished sexual relations, Mrs. Peterson’s veracity sustained a material blow on this point when she was impeached based upon a direct conflict between her trial testimony and her deposition testimony. At trial, she testified that the subject accident greatly reduced the frequency of the parties’ relations. In her deposition, however, Mrs. Peterson denied that the subject accident had anything to do with the couple’s decreased relations. She had no reasonable explanation for her changed testimony. Therefore, Mrs. Peterson’s inconsistent testimony created a conflict in the evidence that the jury was apparently unable to reconcile.
Regarding the claim for loss of society and attentions, Mr. Peterson testified that one of the activities that he enjoyed with his wife prior to the accident was travel, both within Florida and to North Carolina. He testified that he was no longer able to enjoy these trips with Mrs. Peterson due to her injuries. However, Mr. Peterson conceded that several months after the accident, Mrs. Peterson was alone when she drove from Florida to New York. Mr. Peterson estimated the trip to require twenty-six or twenty-seven hours of driving. He testified that she made this drive straight through the night without stopping. These inconsistencies were placed before the jury, and a fair interpretation of its verdict is that the jurors resolved the claim against Mr. Peterson.
Regarding the claim for loss of comfort and services, while Mr. Peterson testified that because of his wife’s injuries he was called upon to clean windows and counter-tops and to vacuum floors, the unrebutted evidence was that Mrs. Peterson continued to perform these sorts of house-cleaning duties at work for several months after the accident. This begs the question as to why Mrs. Peterson was not able to do these things at home. Again, this conflict was within the province of the jury to resolve, and a reasonable conclusion from its verdict is that the jurors were not persuaded.
It is important to note that the subject trial took place over a period of four days. The jury was in the best position to observe Mrs. Peterson’s demeanor and mobility, both on and off the witness stand. It is also important to note that the jury awarded Mrs. Peterson zero damages for past or future wage loss, although Mrs. Peterson’s occupation was a physically demanding one, that of a housekeeper. A reasonable interpretation of the jury verdict is that while the jury was satisfied that Mrs. Peterson sustained an injury, the injury that she sustained was minimal and insufficient to support Mr. Peterson’s derivative claim.
The aforementioned New York trip was an important topic in the trial. Mr. Peterson testified that on his wife’s return trip to Florida, her vehicle struck a deer in Pennsylvania, causing property damage. Although Mrs. Peterson denied sustaining injuries as a result of this incident, there was record evidence that a significant portion of her medical treatment was undertaken after this accident. In addition, Mrs. Peterson had been working after the subject accident but did not work after the Pennsylvania accident involving the deer.
Also important is the fact that the jury was instructed pursuant to Florida Stan *848 dard Jury Instruction (Civil) 601.2(a), formerly 2.2(a), which allowed them to assess the believability of the witnesses. Instruction 601.2(a) provides:
[The jury] may properly consider the demeanor of the witness while testifying; the frankness or lack of frankness of the witness; the intelligence of the witness; any interest the witness may have in the outcome of the case; the means and opportunity the witness had to know the facts about which the witness testified; the ability of the witness to remember the matters about which the witness testified; and the reasonableness of the testimony of the witness, considered in the light of all of the evidence in the case and in the light of your own experience and common sense.
Based upon the jury verdict, a reasonable conclusion is that the jury believed much of Dr. Knezevich’s testimony and did not believe some of the claimants’ testimony. Where, as here, “there is some evidence, whether by direct testimony or cross-examination, that rebuts the claim of loss of consortium” the jury’s award of zero damages is justified. Christopher v. Bonifay, 577 So.2d 617, 617 (Fla. 1st DCA 1991).
As the majority opinion notes, the standard of review applicable to the trial court’s ruling is abuse of discretion. Because there were significant disputes in the evidence regarding Mr. Peterson’s consortium claim, I would affirm the trial court’s ruling.